William T. Collins, S.
This is a proceeding to determine the validity of an election filed by the husband of the deceased to take his intestate share of her estate. His right to do so is contested by the respondent executrix upon the theory that his abandonment of the deceased and his failure to support her constitute a bar under the statute. (Decedent Estate Law, § 18, subd. 4.)
The testimony developed the record of a strange and turbulent domestic relationship between the deceased and the petitioner. At the time of their marriage, Mrs. Donnelly was employed as a highly paid executive in the advertising field. She continued to be so employed throughout the course of their married life. The petitioner on the other hand quite frankly acknowledged that he had had no steady employment during that period, with the exception of the year 1952, when he worked for some 10 or 11 months at the rate of $6,000 per annum. He testified that his earnings from that source were turned over to the deceased, but with that exception all of the expenses of the household were assumed and discharged by his wife. The fact that he had no steady employment led to disputes between the couple *987 and ultimately to their separation. In fairness to the petitioner it should be noted that the projects to which he said he was devoting himself during the course of his marriage have matured now to the point where they produce for him an income in excess of $18,000 a year.
Affairs reached such a state between the deceased and the petitioner that in February of 1954, they separated, entering into a separation agreement which provided for payments by the husband to the wife at the rate of $50 per week. He stated that from that time until her death no such payments were ever made. He moved from the apartment in January of 1954 and took up his residence in the Madison Square Hotel. Credible evidence was offered to the effect that the petitioner made frequent visits to the home of deceased subsequent to their agreement. During those visits he took care of deceased’s child by a former marriage and did some of the housework. It was established as well that on a few occasions at least he stayed over night in the home of deceased and one witness testified to the fact that she visited at the home on one occasion and found the deceased and the petitioner occupying the same bedroom.
The deceased met her death as the result of an accident which occurred on May 30, 1954. The petitioner, at her request, was called to her bedside in the hospital where she died. Witnesses testified to the fact that she on that occasion asked the petitioner to move back to the apartment so that he could take care of her infant son during the time she would be required to remain in the hospital. On the record as described, the petitioner insists that the separation agreement, in which each relinquished any rights in the other’s estate, was nullified and ahrograted by the resumption of the marital relationship, which he claims was evidenced by the fact that cohabitation was resumed from time to time after his departure from the common household. '
To succeed, the petitioner must establish two elements: He must first show that his acknowledged failure to support deceased was condoned by her and that she did not expect contributions from him for that purpose. The agreement containing a provision for the payment of $50 per week from the petitioner to the deceased is wholly at variance with any such state of affairs. Even if it were to be assumed that their prior martial record of several years standing evinced a willingness on the part of the wife to excuse her husband’s obligation to contribute to her support, that condition came to an end when the agreement was executed.
In the light of these facts it was incumbent upon the petitioner to establish that the resumption of the marital relationship was *988 of such a nature as to result in the nullification of the agreement. Giving full weight to the testimony of the witnesses produced by the petitioner, the court is unable to find that element present. A concise statement of the rule is to be found in Matter of Landon (149 Misc. 832), where the court said on page 834: “ The reconciliation must be complete with an intent at least that it shall be permanent. The last cited case [Carson v. Murray, 3 Paige Ch. 483] holds that the length of time such reconciliation lasts is unimportant. However, a separation agreement is not vitiated because of acts of sexual intercourse by the parties under circumstances that support the inference that no normal family life had been resumed or intended.” (See to like effect, Hughes v. Cuming, 36 App. Div. 302, revd. on other grounds, 165 N. Y. 91; Fierman v. Fierman, 62 N. Y. S. 2d 650.) In this connection the factor to which the court has assigned chief significance was the petitioner’s failure to give up his quarters at the Madison Square Hotel during the lifetime of his deceased wife. It is quite obvious that had they intended to resume a normal relationship, as husband and wife, the parties would not have maintained separate homes as they in fact did up until the wife’s death.
Because on this record the petitioner is shown to have failed to discharge his obligation to contribute to his wife’s support, as required by the directions of the agreement of separation, and because the agreement was in effect at the time of his wife’s death, the court holds that the right of election was not available to the petitioner and its attempted exercise is held to be a nullity.
In reaching this conclusion the court was not impressed by the petitioner’s attempt to evade the terms of the agreement by seeking to establish the fact that it did not represent the understanding of the parties and that it was privately agreed that he was not expected to contribute to his wife’s support. A quite contrary state of affairs in fact existed, for as the agreement stated:
“No modification or waiver of any of the terms of this agreement shall be valid unless in writing and executed with the same formality as this agreement. No waiver or any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.
' ‘ The parties have incorporated in this agreement their entire understanding. No oral statement or prior written matter extrinsic to this agreement shall have any force or effect. The parties are not relying upon any representations other than those expressly set forth herein.”
Submit decree on notice.