S. Samuel Di Falco, S.
The will of the testatrix makes no provision for her husband. The first paragraph reads: “I state that I am the wife of Harold W. Dail, from whom I am separated, and who, by Agreement of Separation dated November 6, 1959, has waived any and all interest in my estate, pursuant to Paragraph 5 thereof.” The executor under her will seeks a judicial determination of the validity and effect of a notice of election to take against the will which was filed by the husband of the testatrix.
The respondent and the testatrix were married on October 3, 1955. Thereafter, they lived together in an apartment that had been occupied by the testatrix for several years prior to her marriage. On November 6, 1959 the parties executed the agreement to which the will refers. The agreement recites that “ unhappy differences ’’had arisen between the parties “ by reason of which they have separated and are now living separate and apart”. It recites that “ the parties have agreed to live *810 separate and apart and will continue to live separate and apart ’ Following such recitals are the covenants that it shall be lawful for the parties thereafter to live separate and apart from the marital control and authority of each other, as if each were sole and unmarried, and that neither party shall molest or annoy the other or endeavor to compel the other to cohabit or dwell with him or her. The agreement states that each of the parties had sufficient financial means to support and sustain himself and herself, and each party waived all claim to support from the other. The wife agreed not to contract any debts or liabilities for which the husband or his estate would become liable, and she agreed to save him harmless from any debts or liabilities then existing or that may thereafter have been incurred by her. The fifth paragraph of the agreement reads: ‘ ‘ Each of the parties hereto does elect to forfeit and hereby waives any statutory or intestate right or interest, which otherwise would be conferred on or vested in him or her with respect to any property, real or personal, now owned or hereafter acquired by the other party. Each party does hereby agree to forego and does hereby release the other party and his or her estate from any and all intestate interest or distributive share which he or she might otherwise become entitled to receive upon the death of the other and hereby waives the right to elect to take as against any Will or Codicil heretofore or hereafter made by the other. Each party does hereby agree to permit any Will of the other party to be probated, and allow administration of the Estate of the other party by the person or persons who would be legally entitled to do so, as if the parties hereto had not married.”
The husband testified, without objection, to many personal transactions with the testatrix. The separation agreement, he said, was executed by the testatrix on the date specified in the bedroom in the apartment. She had been ill for some time and had been in hospitals frequently during the years 1958 and 1959. Although his testimony at the hearing did not describe her physical condition, the husband concedes in his brief that as early as March, 1959 her condition had become acute, and he learned at that time that she had been suffering from cancer since 1951. His brief further states that between March and August 1959, the testatrix was hospitalized three times, each time for about a month. Apparently her last stay at home was between August and November, 1959. It was very apparent that on the date that she signed the agreement her condition was most serious. The husband testified that on the second day following the agreement, she became very ill, and a nurse was *811 employed to care for her. Very early next morning she was taken to the hospital. The husband testified that he and the decedent continued to live in the apartment from the time of the signing of the agreement on November 6 until the decedent was removed from the apartment at six o’clock in the morning of November 9, and that he continued to live in the apartment thereafter until the death of his wife, which occurred on January 5, 1960. He said that he had taken his wife to the hospital, and that while she was there, he saw her every day.
The husband conceded that he had maintained a separate apartment for many years prior to his marriage, that he continued to lease that apartment during his married life. However, he said that it was a one-room apartment which he used principally as an office and in which he never slept between the time of his marriage to the testatrix and the time of her death. In the course of his examination at the hearing, the husband was not asked any questions relating to the events which led up to the execution of the agreement or the state of relations between the spouses. Although the agreement recites that the parties had already separated and were then living separate and apart, the husband’s testimony would indicate that this statement was contrary to the actual fact. The contract also recites that the parties had already agreed to live separate and apart and that they would continue to do so, but there is no evidence of any separate agreement theretofore made.
On the basis of the testimony given by the husband, it would seem that the only portion of the agreement that was intended to have any real vitality or significance is the paragraph wherein each of the parties waived and relinquished any rights or interests he or she might have in the estate of the other. The husband admitted that he had never been required to support and maintain his wife. His contribution to the joint living expenses was coneededly insignificant. Although the testatrix appears to have borne the major part of the burden of household expenses, it would appear also that the husband, who was a lawyer, was able to support himself without looking to his wife for assistance. The covenant that each of the parties waived any claim for support and maintenance from the other Avas, therefore, of little practical consequence. Of little significance, too, was the promise of the wife not to contract any debts or liabilities for which the husband would become liable.
The provisions in paragraph fifth of the agreement whereby the husband xvaived his right to elect to take against the Avill of the wife, in and of itself, would be valid and effective, whether “ executed with or without consideration ”. (Decedent Estate *812 Law, § 18, subd. 9, par. [d].) It would become unenforcible only if the waiver was given in consideration for an illegal promise or if an illegal promise is an essential part of the agreement between the parties. (Restatement, Contracts, § 607; 6 Williston, Contracts [Rev. ed.], §§ 1780, 1782.)
A contract for the future separation of husband and wife is against public policy and is unenforcible (Whedon v. Whedon, 247 App. Div. 463; Dowie v. De Winter, 203 App. Div. 302; 6 Williston, Contracts [Rev. ed.], § 1742). However, if the parties have actually separated prior to the making of an agreement, or if the agreement is made in contemplation of an immediate separation which takes place as contemplated, an agreement between husband and wife for division of their assets or adjustment of their property rights is valid and enforcible. (Matter of Hughes, 225 App. Div. 29, 31, affd. 251 N. Y. 529; La Montagne v. La Montagne, 239 App. Div. 352; Restatement, Contracts, § 584.) The authorities emphasize the fact that the separation must be immediate and that it must take place immediately, but the term 1 ‘ immediate ’ ’ must depend somewhat for its meaning upon the surrounding circumstances. Thus, in Marks v. Marks (127 Misc. 416) the agreement was made while the parties were living together and they separated “ one or two days later ”. The lower court held that the agreement was invalid because made while the parties were living together. The Appellate Term, reversing that decision, said: “ Where parties draw the agreement in contemplation of immediate separation, the general situation is that although they are living under the same roof, their conjugal relations would appear to be just as much altered from the normal state as if they were actually living apart. In the instant case, in fact, there were vital disagreements immediately prior to the separation contract and an action for separation had previously been begun.” (pp. 419-420.) It held that, under the circumstances, the agreement had been made with a view of an immediate separation and not in contemplation of any contingency in the future and that the lower court had erred in holding it illegal.
In the pending case, the actual separation of the parties took place as soon as was reasonably possible under the circumstances. The agreement refers to the “unhappy differences ” that had arisen between the parties. The testatrix was then gravely ill. The nature of her illness was known to her husband and, presumably, to herself. The actual separation of the parties would undoubtedly mean the departure of the husband, who already had his own separate living accommodations. In all fairness to bim, it must be said that his remaining in the apart *813 ment was undoubtedly dictated by his sense of what was fitting and humane under the circumstances. It is significant that despite the serious illness of the testatrix, the parties nonetheless deemed it necessary to execute this agreement. The differences between them must, indeed, have been ‘ ‘ unhappy ’ ’ to have called for such an agreement at this juncture. Their conjugal relations must have been all but ruptured for some period of time, but the rupture became complete when the decedent left for the hospital. At that point the separation of the parties became an actuality. The respondent was then free to live wherever he chose. The fact that he continued to live in the apartment for which the testatrix had long paid rent, cannot be said to have constituted a continuance of living with his wife. Under the circumstances of this case, the court finds that the actual separation of the parties took place as soon after 1 he signing of the agreement as the conditions would reasonably permit.
The husband does not contend that there was a reconciliation of the parties. There is no evidence of any reconciliation during the stay of the testatrix in the hospital. The visits to the hospital do not establish any basis for a finding of a reconciliation. (La Montagne v. La Montagne, 239 App. Div. 352, 356, supra.) The husband was allowed to testify freely to personal transactions with his wife, and he gave no testimony of any change in their feelings towards each other. Indeed, the text of the will would seem to negate any such reconciliation.
The court, therefore, holds that the husband of the testatrix validly and effectively waived his right to elect to take against her will. Submit decree on notice accordingly.