John M. Keane, S.
This is a proceeding under SCPA 1421 to determine the validity of a right of election made by William C. Whiteford against the will of his late wife, Ann R. Whiteford, who died October 25, 1968. The executrix, a sister of the decedent, has initiated this proceeding to have the right of election declared invalid because of provisions in a separation agreement between the decedent and her husband dated September 5,1956. The answer of William C. Whiteford alleges .that the provisions of the separation agreement had been nullified by the subsequent reconciliation between the decedent and himself.
The facts can be briefly stated. The decedent and William C. Whiteford were married on March 14, 1922. They had no children. On September 5, 1956, they entered into a separation agreement after a separation action had been begun by Ann R. Whiteford in Supreme Court. For a period of around six months William C. Whiteford lived separate and apart from his wife. According to the testimony he returned to their home around Easter time of 1957. Thereafter both lived in the same house until her death.
The facts as presented to the court seem to present little if any controversy. However, the interpretation placed on these facts by counsel for the estate of the deceased wife and counsel for the surviving husband diverges most significantly. Counsel for the surviving husband has presented a picture in *403 his brief in which the husband appears to be somewhat less devoted than Abelard was to Heloise in ;the early days of their love but, nonetheless, very devoted and attentive to his wife. On the same facts, counsel for the estate of the deceased wife in his brief pictures the husband as a subservient vassal for his liege lady in whose castle he lived in the bedroom over the garage.
The will of Ann B. Whiteford was executed April 15, 1955, almost a year and half before the separation agreement was signed. This will, which has been admitted to probate in this court, provides for her husband as follows: “fourth: I make no bequest to, or provision for my beloved husband, William C. Whiteford, for the reason that his individual estate is more than adequate. ’ ’
Belying primarily on Graves v. Graves (174 N. Y. S. 615), the surviving husband contends that the separation agreement was invalid because he did not leave his wife until some time after its execution. The facts as presented do not support this argument. The court finds that the husband left sufficiently soon after the execution of the agreements so that it was valid.
There is no question that if the separation of the parties had continued until their death, the provision of the separation agreement concerning waiver and release of the right of election would be effective. (See Matter of Donnelly, 3 Misc 2d 986 and Matter of Sturmer, 303 N. Y. 98.) In both cases cited the separation continued until the death and there was no finding of any reconciliation.
Additionally, if the waiver and release of a right of election had been contained in a separate instrument executed at any time before or during the marriage, it, too, would have been effective if it met the other requirements of the statute. (EPTL 5-1.1 subd. [f]). (See Matter of Griffiths, 38 Misc 2d 87 and Matter of Wynne, 194 Misc. 459.)
Reduced to its simplest terms, the surviving husband claims that the reconciliation in 1957 between him and his now deceased wife nullified the entire separation agreement. The petitioner, representing the estate of the deceased wife, contends that the separation agreement was, in effect, a number of separable agreements, one of which was the waiver of the right of election. Even assuming that some of the provisions became inoperative by reason of the reconciliation, the petitioner claims that the provision for the waiver of. the right of election remained valid and existing at the time of the death of Ann B. Whiteford.
*404 Counsel for the petitioner argues that the brief of counsel for the surviving husband reaches conclusions relating to a reconciliation not supported by evidence and testimony. His point is well taken except that he then proceeds to reach conclusions relating to the relationship between the husband and a manicurist that are equally unsupported by evidence submitted to this court. The zeal of the advocate is appreciated by the court but no service is done in favor of a cause when too many liberties are taken with the evidence. The court also has a transcript of the testimony.
To support his claim of reconciliation, the surviving husband has relied strongly on earlier cases which set forth the requirements to sustain common-law marriage in New York prior to 1933. The argument is that facts"which in those days would support a common-law marriage would support the reconciliation claimed here. Certainly here where both parties lived in the one-family dwelling all during the period in question, the facts are much stronger than in such eases as Gall v. Gall (114 N. Y. 109) and Badger v. Badger (88 N. Y. 547).
In none of the decisions cited by counsel for the petitioner is the exact present situation presented, namely, a separation agreement containing a waiver of the right of election followed by a reconciliation. In most of the decisions, the parties continued to be separated. This, of course, is different from the present state of facts.
The surviving husband was permitted to testify after objection of counsel for the petitioner on the basis of CPLR 4519. The court received the testimony which consisted for the most part of statements that he did not live alone; that.he was not alone when he went to a nurses’ alumnae association reunion; that he was not alone when he attended business banquets of his employer, and that he was not alone on social occasions outside cf the home. Of course, the implication was that his wife accompanied bim,
The court reserved decision on the objection of counsel for the petitioner. Although the court believes that the testimony is technically admissible, it proved nothing and none of such testimony has been considered in reaching the decision herein. There was ample other testimony and documentary proof to sustain the contention that from Easter time 1957 until the death of Ann R Whiteford, she and her husband, William C. Whiteford, lived in the home which they owned as tenants by the entirety.
*405 Counsel for the estate of the deceased wife argues that the reconciliation necessary to support any claim of the surviving husband does not exist here. Basically, petitioner contends that reconciliation is a subjective 'matter. Since clairvoyance is not a faculty of this court, a determination on the question of reconciliation must be based on objective evidence. Petitioner argues that reconciliation is not conceivable when the husband allowed the manicurist to remain deputy on his safe-deposit box until May 18, 1965, almost eight years after the husband went back to live with his wife. The testimony, however, showed that the manicurist never had a key to the box, nor had she ever visited the vault in all those years. Finally, there was no proof that she ever saw the husband after he returned to his wife in the spring of 1957.
It is not a single fact but a cumulative series of different facts which will sustain a finding of reconciliation as the term is generally interpreted. Reconciliation requires more than an occasional romp on the connubial couch with the separated spouse. Here the parties lived in the same house for over 11 years after the brief period of separation. This was not the brief period which was found insufficient in Peer v. Peer (20 Misc 2d 878) and Fierman v. Fierman (62 N. Y. S. 2d 650).
Another argument of the estate of the deceased wife to sustain a rejection of the right of election rests upon the fact that after the division of the jointly held property pursuant to the separation agreement, the parties did not hold any property jointly again. Nor after that time did they maintain a joint safe-deposit box. During all of this period the parties did file joint income tax returns. Although much is made of the fact that the joint property was all evenly divided, it is most significant that their biggest single asset, namely, the IBM stock, was never jointly held but was owned by each of them separately before any separation agreement.
Had this largest single asset been also held jointly, then more weight could be given to this argument of the petitioner. It was the remarkable increase in value of this particular asset that made the estate of the decedent worth approximately $700,000 at the time of her death, while, at the same time, her husband had property consisting principally of IBM stock worth $350,000. With a continuing increase in the value of this particular asset, the retention in separate ownership of the divided securities once jointly held is not deemed significant to this court. In fact, there are many writers who would *406 strongly advise against a joint holding of property oí this magnitude.
The activity in regard to safety deposit boxes for both parties is a little unusual. On March 4,1957, before he returned to his wife, the husband designated a manicurist as the deputy on his box. She was called by the petitioner and testified that she visited the bank on that date. She further testified that she never had a key to the box and never entered the box. The designation of the manicurist as deputy on the box continued until May 18, 1965, when William 0. Whiteford removed her as deputy. The testimony of the manicurist that she nevqnentered the box was corroborated by an officer of -the bank who testified concerning the rental of the box.
The decedent technically had no safety-deposit box of her own. The petitioner, Alice M. Ogden, a sister of the decedent, and the decedent went to the city office of the First-City National Bank of Binghamton, N. Y. on January 7, 1957, where a safety-deposit box was rented in the name of Alice M. Ogden. At that time she named the decedent as her deputy. The records presented in court indicated that only the decedent ever entered the box during her lifetime. All of the securities, the will and separation agreement were found in this box by Alice M. Ogden subsequent to the death of the decedent.
The only significant independent act required by the separation agreement was to divide the jointly held securities evenly between the parties. This was done shortly after the separation agreement was executed. No request has been made to undo this executed act. It is clear that under the decisions this would not be permitted. (See Matter of Coccaro, 283 App. Div. 969.)
Basically, the question comes down to this. Is this separation agreement such an instrument that, in the event of a reconciliation, it must be treated as an entity and therefore fall because the parties have gone back living together again? Or does it, as contended by the petitioner, consist of a number of separate agreements all combined into one long instrument so that even if some parts fail the others retain their vitality and validity? The agreement as executed contains no separability clause which ordinarily would be found in an instrument with many parts. Of course, -the instrument was drawn looking to separation, not to reconciliation.
The date of decedent’s will is very significant to this court. It was executed some 16 months before the separation agreement. She made no provision for her husband because she *407 believed he had enough property. There was no proof that he had waived any right of election at this time. The separation agreement contained the release of the right of election. Decedent executed no will subsequent to the separation agreement.
When marital discord occurs and both parties have attorneys representing them on the matter of a comprehensive and unique separation agreement, certainly the question of testamentary disposition generally is raised. The fact that decedent never made a new will indicates to this court that she relied on the basis expressed in her will for excluding her husband rather than on the separation agreement. The fact that she kept the various papers all those years in the safety-deposit box leased to her sister is equivocal and proves nothing.
This court finds as a fact that Ann B-. Whiteford and William C. Whiteford were reconciled as that term is understood in the law. This court further finds that this separation agreement cannot be cut up into individual parts in view of the manner in which it was drafted and executed. This court also finds that reconciliation has nullified the agreement except as to what has been executed. This nullification includes the provision relating to release and waiver of a right of election.
It seemed unusual to this court that such a factual situation as this had not occurred among the hundreds of cases reported under the right of election since its entry into New York law on September 1, 1930 as section 18 of the Decedent Estate Law (now EPTL 5-1.1). Counsel did not present such a decision to the court.
However, in the short decision of Matter of Visich (204 Misc. 1) it would appear that a reconciliation followed the execution of a separation agreement containing a waiver of the right of election. The right of election was granted to the surviving spouse.
The right of election filed by William C. Whiteford is valid and he is entitled to the benefits provided under EPTL 5-1.1.