OPINION OF THE COURT
Fuchsberg, J.
This proceeding was brought pursuant to SCPA 1421 to test the validity of a widow’s election to take a share against the provisions of her husband’s will as provided by EPTL 5-1.1. The controversy centered on the enforceability of a waiver of the wife’s right to elect incorporated in a separation agreement executed by the spouses. A dependent question, conditioned on a finding that the separation agreement was valid, treated with the legal impact on the waiver of an alleged reconciliation between husband and wife. A subsidiary issue, perhaps of paramount practical importance in light of the large increase in the number of marital dissolutions, deals with the severability of such a clause.
These matters come to us against the following background:
Robert J. Wilson and Earlene Wilson were married in 1959. What comes through as a rather checkered married existence led them to sign the separation agreement in 1966. Its preamble stated that "the parties have heretofore separated and are now from some time past living separate and apart from each other and since their separation have agreed to live separately and apart during the rest of their lives”. Among other things, the contract’s implementing clauses divided their real and personal property and waived each one’s claims against the other’s estate. It was also stipulated that any future modification had to be in writing. As relevant here, it was agreed too that "If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect”.
When, upon the probate of Robert Wilson’s will following his death in 1975, Ms. Wilson filed her notice of election, Osceola Sampson Turner, a specific devisee, petitioned for a declaration that the widow had waived any right to do so. Setting out the allegations she expected to establish in support of her claim (see, generally, 3B Warren’s Heaton Surro *63 gates’ Courts [6th ed], § 305, par 2, subd [d]), Mrs. Turner’s petition pleaded the existence of the separation agreement, the waiver it incorporated, and an assertion that the spouses had never reconciled. In her response, the widow, meeting these contentions head-on, averred that the agreement containing the waiver had become ineffective long before the decedent passed away because "in or about 1967 respondent and her husband * * * reconciled their marital differences and resumed their marital relationship and [thereafter] resided together as man and wife, in their marital domicile * * * continuously” until the husband’s death.
But, while the issues thus seemed to be narrowly framed by the pleadings, at trial the parties, with at least the tacit acquiescence of the Surrogate, in fact plotted a much broader litigation course. In his opening remarks, as a prelude to the invocation of the long-standing, and continuing, policy which interdicts a separation agreement when it reasonably can be viewed as inducing, rather than merely recognizing, the disruption of a family unit (see Tirrell v Tirrell, 232 NY 224, 228-229; La Montagne v La Montagne, 239 App Div 352, 355; Matter of Dail, 29 Misc 2d 809, affd 14 AD2d 850; 2 Foster and Freed, Law and the Family, §§ 28:6, 28:13), the widow’s counsel declared: "Your Honor, the Objectant will introduce evidence to show the fact that the Decedent and the Objectant lived together as man and wife from early in 1960 in the premises with which we are concerned; that there was a purported separation agreement entered into on August 2nd, 1966; that at that time they were living together as man and wife and continued to live together thereafter” up to the death of the husband. As the record discloses, these were not idle words. And, since opposing counsel raised no objection to the presentation of this theory of the widow’s case, in fact substantial evidence — including direct testimony from a close friend of the Wilsons, from the couple’s adopted son, from Ms. Wilson’s sister and from the widow herself — thereafter was introduced to prove that the spouses were living together when the separation agreement was signed. Thus, as the case unfolded, the attack on the widow’s right to elect was opposed on alternative grounds: one, whose premise was that the true state of the marriage was then unseparated, supported the theory that the agreement therefore was void ab initio; the other, based on an assumption that the agreement had been valid when executed, argued that it was vitiated by a subse *64 quent reconciliation. Essentially the same witnesses were called by the widow to support both of her theories.
However, at the conclusion of the trial, the Surrogate focused only on the reconciliation contention. Acknowledging the considerable evidentiary basis for the widow’s position on this issue, he rejected it, not because it was outweighed by evidence offered by petitioner or because its substance was shaken on' cross-examination, but because he had formed the opinion that it was "rehearsed”. As to the theory that the separation agreement was invalid because the parties were living as husband and wife when it was executed — possibly because it was not embraced within the formal pleadings, or, perchance, because, applying the maxim falsus in uno falsus in omnibus, he decided to disregard anything to which Ms. Wilson and her witnesses subscribed, or, perhaps, for some other reason he preferred not to mention — the Surrogate failed to address, much less determine, that question at all.
The case having reached the Appellate Division in this posture, that court, upon its own examination of the record, concluded that there had been no proof that the Wilsons were physically separated when the agreement was entered into. Reversing on the facts and on the law, and expressly arriving at an assessment of the witnesses’ credibility diametrically opposed to that reached by the Surrogate, it found that the agreement in its entirety was void from the inception and that, hence, there had never been a valid waiver of the right of election (66 AD2d 893). Apparently because this rendered the reconciliation claim academic, the court did not examine this question.
For our part, being called upon, inter alia, to decide in this nonjury proceeding between sets of factual findings and inferences so at odds with one another (see Bernardine v City of New York, 294 NY 361, 366-367; Cohen and Karger, Powers of the New York Court of Appeals, § 112), we are in agreement with the conclusion of the Appellate Division that the parties were not separated at the time they signed the agreement on which the appellant’s claim is predicated (cf. Matter of Sunshine, 40 NY2d 875).
Indeed, whatever significance, if any, is to be attached to the agreement’s boilerplate recital of an ongoing separation (see Dowie v De Winter, 203 App Div 302), to say the most, support in the record for such a state of affairs is meager. As already indicated, proof that the parties were living together *65 on August 2, 1966, the date of the separation agreement, was, if anything, overabundant. In contrast, the petitioner’s proof to the contrary was reduced to witnesses’ professions of ignorance of the relations between the Wilsons at that critical time and to the recital of inconclusive details such as the spouse’s failure to take their customary winter holiday trip in about 1966 or 1967 and that, though by petitioner’s own admission the Wilsons had lived together in their home at all times between 1960 and 1972, the wife at unspecified times was "in and out” of the house and did not stay there some nights.[1]
Having thus made our choice on the factual controversy, we now turn to explore the legal effect that the invalidity of the separation agreement had on the waiver of the spousal right to elect. Petitioner insists, as did the dissenters at the Appellate Division, that the mutual waiver provision is self-standing and need not fall with the rest of the agreement, all the more so in light of the severability clause.[2]
Of course, whether the provisions of a contract are sever-able depends largely upon the intent of the parties as reflected in the language they employ and the particular circumstantial milieu in which the agreement came into being (see Christian v Christian, 42 NY2d 63, 73; 5 Williston, Contracts [3d ed], § 767, p 629). As to the parties’ intention to continue to abide by any of the individual provisions the agreement contained, however, the record here is devoid of evidence that would support such an interpretation.[3] Nor is the language of the *66 agreement, particularly the presence of the partial invalidity and modification clauses, crucial in this regard. Such clauses are not to be taken to render specific provisions independently enforceable when an agreement itself, rather than any of its components, is brought to an end (cf. 3A Corbin, Contracts, § 694, pp 282-283; 6A Corbin, Contracts, § 1520, pp 757-758).
Most relevant to the circumstances surrounding the genesis of the agreement in the present case is the obvious fact that it, and all its provisions, were intended to govern as between separated spouses. Common experience teaches that, when marital property arrangements are made part of such an agreement, the separation is not merely the occasion but the underlying raison d’etre for the dispositions. Once the partners to the union renounce their incipient state of separation in favor of maintaining their coupled status, absent any indication to the contrary, it is to be assumed that, writing on a clean slate, they intended that all vestiges of the agreement that was to serve to memorialize their separation also fall (see Zimmer v Settle, 124 NY 37, 43; Matter of Whiteford, supra, p 406).
It is interesting to observe that the force of this principle is so pervasive that it applies whether the separation agreement is one rendered void ah initio by reason of the parties’ failure to live separate and apart or whether it is one abandoned later on because the spouses have effected a reconciliation. In either case, the conduct of the spouses may be understood to manifest an intention to void the agreement in its entirety. (See Matter of De Francesco, 24 AD2d 81, affd 19 NY2d 618; Whedon v Whedon, 247 App Div 463; cf. Matter of Dail, 29 Misc 2d 809, affd 14 AD2d 850, supra; Matter of Whiteford, supra; 1 Lindey, Separation Agreements and Ante-Nuptial Contracts, § 27, subd 3). Certainly, the rule is not a hard and fast one, but rather one which governs in the absence of reliable indicia of a contrary intention.
Thus, in marked contrast to the present case are the cases relied upon by petitioner in which individual provisions in separation agreements — including ones providing for the waiver of claims against a spouse’s estate — have been held enforceable notwithstanding that the agreement itself has *67 been wholly invalidated (see Stahl v Stahl, 16 AD2d 467; Matter of Frisch, 49 Misc 2d 898). These cases concerned parties who, far from manifesting any intention to renounce their separated states, continued to live apart and thus evinced anything but a mutuality of desire that the material benefits secured by the agreement go by the board (see Matter of Whiteford, 61 Misc 2d 402, 404, affd 35 AD2d 751, supra).
For all these reasons, the order of the Appellate Division should be affirmed.

. Moreover, the parties own appellate course invites no different analysis. In the Appellate Division, the opening point of the widow’s brief was devoted to an extensive exposition of her position that there was no separation at the time of the agreement, with specific emphasis on the testimony which buttressed that contention. Yet the issue was wholly ignored in the opposing brief. Nor, on this appeal to us, is there raised any procedural or substantive obstacle to the widow’s argument that the disposition below should be affirmed on this rationale. Rather, petitioner’s brief completely ignores the issue.

. It is not disputed that the waiver notice in its formal aspects complied in all respects with the requirements of EPTL 5-1.1 (subd [f], pars [2], [3]).

. We have no occasion here to examine the rights of the parties with respect to real estate that had been conveyed to the wife pursuant to the terms of the agreement at about the time of the execution. No claim with respect to such property was made or proved at nisi prius and we note that the parties have not raised any question as to the validity of the transfers in this appeal. Nor observing also that there is nothing in the record to suggest an intention by the spouses to nullify the conveyances despite the invalidity of the agreement, is there need to concern ourselves with the effect of the substantial passage of time and possible intervention of *66 the rights of third parties. (See Coccaro v Coccaro, 283 App Div 969; affd 308 NY 708; Dudley v Fifth Ave Trust Co., 115 App Div 396, affd 188 NY 565; Matter of Whiteford, 61 Misc 2d 402, affd 35 AD2d 751; Zoloto v Zoloto, 13 Misc 2d 1091; 2 Foster and Freed, Law and the Family, § 28.50.)