In the Matter of the Probate of the Will of ISABELLA WHARTON, Deceased.

EDMUND O. AUSTIN, Appellant; JAMES F. EGAN, as Public Administrator of New York County, et al., Respondents.

First Department, May 17, 1946.

*Arnold J. Brock* of counsel (*William P. Balaban* with him on the brief), for appellant.

*Joseph A. Cox* of counsel (*Joseph T. Arenson* with him on the brief), for the public administrator, respondent.

*Isadore I. Steinberg,* special guardian, *pro se.*

COHN, J. Isabella Wharton died on June 21, 1944, at the age of sixty-three. Her husband, Thomas N. Wharton, had died about eleven months before. On November 23, 1943, at the law office of her attorney, Edmund O. Austin, Mrs. Wharton executed her last will. By its terms she bequeathed $500 to a friend, and the residuary estate she left to Mr. Austin. The testatrix had no children and no blood relative. Her entire estate was worth about $5,000. Mr. Austin, who is the appellant, offered the will for probate. Respondents, the public administrator and a special guardian appointed for unknown heirs, filed objections claiming that there had been failure to comply with the statutory requirements in its execution, that there was absence of testamentary capacity, and that the document had been induced by fraud and undue influence practiced by proponent. Though the testamentary capacity of the deceased and the factum were satisfactorily proved, the Surrogate in refusing probate found that the will was procured by undue influence of proponent and that by reason thereof it constituted a fraud upon deceased.

Appellant has been a reputable member of the Bar of this State for over thirty-five years. The proof established that he had known decedent's husband, Thomas N. Wharton, for more than thirty years; that he was a constant visitor at the home of decedent; that for many years he managed the interests of the Whartons in a parcel of real estate; that there was a close and friendly attachment between proponent and Mr. and Mrs. Wharton, and that from the year 1936 when Austin married, he and his wife were frequently in social contact with the Whartons. Shortly after the death of Mr. Wharton, Mrs. Wharton and her sister-in-law, Alice Wharton, visited the Austin home, where they remained for a week or ten days. Friendly, social and business relations between Mrs. Wharton and the Austins continued until the testatrix' death.

The testatrix was a normal woman in good health who attended to her own housework and did her own marketing. She was able to read and write and was apparently active, alert and intelligent. On November 23, 1943, during office hours, she came unattended to her lawyer's office. In the presence

of the testatrix, appellant dictated the provisions of the will to his stenographer, a Miss Eleanor Zimbler. After transcription, the document .was brought to Mr. Austin's private office and by him read to Mrs. Wharton and its provisions discussed. Mrs. Wharton, her attorney and Miss Zimbler then proceeded to the lobby on the main floor of the building. There one Nathan Jelling, the proprietor of a cigar stand, who knew Mrs. Wharton, was asked to witness ·the will which the testatrix signed in his presence. He complied. Miss Zimbler also signed in response to a similar request. After the will had been thus executed, the testatrix left the document in appellant's office where it remained until her death. According to the testimony of the subscribing witnesses, at the time of the execution of the will the testatrix appeared strong and well, was of sound mind and was acting under no restraint.

In support of the charge of undue influence, respondents rely in part upon the confidential relationship which existed between the testatrix and appellant, who was the draftsman of the will and its principal beneficiary. In further support of the charge, ·respondents make reference to evidence concerning an insurance transaction between decedent and proponent. It appears that in the late summer of 1943 the proceeds of four insurance policies upon the life of Thomas N. Wharton were delivered to appellant by the testatrix and by Alice Wharton, a sister of Mr. Wharton, the beneficiaries of such insurance. Evidence was adduced to show that the insurance moneys belonging to the testatrix had not been paid to her during her lifetime and that the share belonging to Alice Wharton had been paid in November, 1944, to an attorney representing her. Testimony of the appellant as to all transactions with the deceased, upon objection, was, of course, excluded.

However there was no proof as to what arrangement had been made between appellant and the two women with reference to these funds. Alice Wharton, the sister-in-law, was a witness for respondents. Yet there is no word from her to show that appellant was not ready and willing to return the money which she had left with him. Nor is there .any proof that appellant improperly withheld the insurance money which the testatrix entrusted to his care. Alice Wharton was obviously in a position to shed full light upon the circumstances under which she indorsed and delivered the check from the insurance company to appellant. She was not questioned concerning such arrangements nor was she interrogated as to what arrangements existed between the testatrix and the appellant. Moreover, in the

testimony of this witness there is not the remotest suggestion that appellant ever exercised undue influence over the decedent or that the testatrix had ever expressed to her or to any other person any testamentary intent other than that contained in the will.

Respondents also urge that the natural object of decedent's bounty was Alice Wharton. There is no merit to this contention. She was not a blood relative of the deceased. Though she had lived with Mr. and Mrs. Wharton after she arrived from the West Indies, there is evidence that for a period the relationship between Alice Wharton and the deceased was not altogether a pleasant one. Mr. Wharton upon his death made adequate arrangements for his sister. In fact, during his lifetime as well as by will, he appears to have made the same provision for his sister as he had made for the testatrix.

Where a client makes a will in favor of her lawyer, such a will, when made to the exclusion of the natural object of the testatrix' bounty, is viewed with great suspicion. (*Marx* v. *McGlynn*, 88 N. Y. 357, 371.) In the absence of any explanation a jury may be justified in drawing the inference of undue influence. (*Matter of Putnam*, 257 N. Y. 140, 143.) While "Attorneys for clients who intend to leave them or their families a bequest would do well to have the will drawn by some other lawyer" (*Matter of Putnam, supra*, 143 [Crane, J.]), it does not follow as a necessary conclusion that in all such cases the will is invalid, for if the will be fairly made the law does not condemn it.

Undue influence is an affirmative assault on the validity of a will and the burden of proof on that issue does not shift but remains on the party who asserts its existence. (*Matter of Schillinger*, 258 N. Y. 186; *Matter of Kindberg*, 207 N. Y. 220, 228–229; *Matter of Smith*, 95 N. Y. 516, 522; *Matter of Henderson*, 253 App. Div. 140, appeal dismissed, 278 N. Y. 531.) To void a will on the ground of undue influence there must be affirmative evidence of the facts from which such inference is to be drawn. There must be proof that the party benefiting by the will so controlled the actions of the testatrix either by importunities which she could not resist or by deception or fraud that the instrument is not really the will of the testatrix. (*Cudney* v. *Cudney*, 68 N. Y. 148, 152.)

Here we do not find any affirmative proof of undue influence nor do we find sufficient facts which would warrant an inference that appellant exerted undue influence upon the testatrix. Appellant, in addition to proving the factum of the will, gave a

satisfactory explanation of his relationship with the deceased which repelled any inference that the confidential relationship between the parties had given rise to any improper influence. The will, so far as the record shows, was the free, untrammeled and intelligent expression of the intentions of the testatrix. Since she had no blood relatives, it does not seem unnatural that she should favor her friend and adviser of long standing. Gratitude, esteem or friendship which induces another to make testamentary disposition of property cannot ordinarily be considered as arising from undue influence and all these motives are allowed to have full scope without in any way affecting the validity of the act. (*Children's Aid Society* v. *Loveridge,* 70 N. Y. 387, 394; *Matter of Isham,* 262 App. Div. 929, affd. 287 N. Y. 564.)

The finding of the Surrogate that the paper propounded as the will of the deceased was secured by undue influence, we think, is against the weight of the evidence.

In view of the foregoing, the application of appellant in the probate proceeding for costs and disbursements should have been granted.

The decree and the order should accordingly be reversed, with costs and disbursements to the appellant payable out of the estate, and the matter remitted to the Surrogate of the County of New York for further action in accordance with this opinion.

MARTIN, P. J., TOWNLEY and GLENNON, JJ., concur; DORE, J., dissents and votes to affirm.

Decree and order reversed, with costs and disbursements to the appellant payable out of the estate and the matter remitted to the Surrogate of the County of New York for further action in accordance with opinion. Settle order on notice.