OPINION OF THE COURT
Millard L. Midonick, S.
This contested probate proceeding was tried before the court without a jury. The propounded instrument is dated May 21, 1976. The decedent, an elderly childless widow, died four months later on September 1, 1976. The will of the testatrix provides that her entire estate, after payment of debts and funeral expenses, shall be divided equally among two nieces *679 and the husband of one of the nieces, who was also the attorney-draftsman of the will and the executor named in the will. Seven of the nine remaining distributees, nieces and nephews of the decedent who were specifically disinherited under the terms of the will, have filed objections to probate. They allege lack of due execution, lack of testamentary capacity and fraud and undue influence.
At the trial, four witnesses were produced by the proponent in the following order: the two subscribing witnesses to the will, the testatrix’ attending physician and the attorney-draftsman legatee.
From the evidence and testimony presented at the trial, the court is satisfied that at the time of execution the testatrix was of sound mind. There remains for determination by the court the issues of due execution and fraud and undue influence.
The challenge to probate on grounds of lack of due execution rests on an allegation that the testatrix failed to publish her will as required by EPTL 3-2.1 (subd [a], par [3]).
The first subscribing witness, the secretary to the resident manager of the senior citizen’s home where the testatrix resided, testified at trial that, despite prior inconsistent testimony at the examination before trial, the decedent said to her: "This is my nephew who is an attorney. I would like you to witness my will.” The second subscribing witness, the resident manager of the senior citizen’s home, testified that he was asked by the decedent to witness "something” a day or two before the document was actually signed but could not remember if he was told that the document in question was a will. He also testified that he thought the attorney-draftsman asked him to witness "a will” at the time of execution.
It is essential that the testator shall at some time during the ceremony declare to each witness that the instrument which he has signed is his will. (EPTL 3-2.1, subd [a], par [3].) Case law holds that the requirement of express declaration need not be followed literally as long as necessary information is conveyed to the subscribing witnesses so that they are informed during the execution ceremony in the presence of the testator that the testator is aware that the document in question is his or her will (Matter of Beckett, 103 NY 167). "It must appear that, as between the testator and the witnesses, there was some meeting of the minds upon the understanding that the instrument was the testator’s will”. (Matter of Turell, *680 166 NY 330, 337.) A request to sign a will made by one supervising the will within the hearing of the testator with his silent assent is sufficient publication. (Matter of Nelson, 141 NY 152; Matter of Hunnefield, NYLJ, Sept. 22, 1977, p 6, col 2.) The objectants’ allegation of lack of due execution because of inadequate publication is therefore without merit.
The issue remains as to whether all or parts of the propounded instrument were the product of fraud or undue influence.
Undue influence must be proven by the person who claims it was exercised (Matter of Hollenbeck, 65 Misc 2d 796, affd 37 AD2d 922; Matter of Lefferts, 29 Misc 2d 594, affd 16 AD2d 939). However, in the case at bar, the objectants failed to produce any witnesses or evidence during the trial despite the fact that they bore the burden of proof on this issue. Nevertheless, there are certain cases in which the law permits an inference to be drawn that undue influence has been exercised. There are cases where a patient makes a will in favor of his physician, a client in favor of his lawyer, a person in favor of his clergyman. "Although the burden of proving undue influence never shifts from the contestants (Matter of Kindberg, 207 N. Y. 220, 228-229; Matter of Schillinger, 258 N. Y. 186; Matter of Kaufmann, 14 A D 2d 411, 413; Matter of Wharton, 270 App. Div. 670, affd. 297 N. Y. 671), where, as in this case, a client makes a will in favor of her lawyer to the exclusion of the natural objects of her bounty, such will is looked upon with great suspicion by the law and, in the absence of a satisfactory explanation, the trier of the facts is warranted in drawing an inference of undue influence (Matter of Putnam, 257 N. Y. 140).” (Matter of Hayes, 49 Misc 2d 152, 153.) It is therefore incumbent upon the attorney-draftsman to come forward and rebut this inference (Matter of Patterson, 206 Misc 268, 270). In this instance, the proponent attorney-draftsman took the stand to explain the suspicious nature of the will in question. Although he was an incompetent witness if challenged as to each question, by virtue of invocation of the "dead man’s” statute (CPLR 4519), he was permitted to testify, by reason of failure of objection to these questions, that he considered the decedent more of a mother than an aunt by marriage, that he visited with the decedent often and that he arranged for her admission into the senior citizens’ home where she resided prior to her death. He then rested his case.
*681 "The law, recognizing the delicacy of the situation, requires the lawyer who drafts himself a bequest to explain the circumstances and to show in the first instance that the gift was freely and willingly made.” (Matter of Putnam, 257 NY 140, 143.) The explanation of the circumstances surrounding the legacy need not be made by the attorney himself. It can be explained through other evidence and other witnesses. The court finds that although the attorney-draftsman attempted to rebut the inference which may be drawn against him through his own testimony, in view of the bias attributable to him (Matter of Weinstock, 78 Misc 2d 182, 186) and the overly large share of his legacy, his testimony alone is insufficient to overcome the suspicious nature of the gift. Had he been content with a token gift, the court might have been willing to forego the inference of undue influence on the basis of his testimony alone. A gift of one third of an estate to the attorney-draftsman, which in combination with the one-third share to the attorney’s wife-niece resulting in a bequest of two thirds of the estate, requires more than the self-serving testimony of the attorney-draftsman, for a sufficient showing to overcome the usual inference. This court must strongly reiterate the admonition stated by the Court of Appeals in Matter of Putnam (supra, p 143): "Attorneys for clients who intend to leave them or their families a bequest would do well to have the will drawn by some other lawyer. Any suspicion which may arise of improper influence used under the cover of the confidential relationship may thus be avoided.” The Surrogate’s Court, New York County, has in practice instituted the requirement of a full "Putnam hearing” in place of the submission of affidavits before a will in which an attorney-draftsman receives a legacy of substance can be admitted to probate. A similar requirement for a hearing also exists in cases where other professionals who have served decedents receive legacies, such as physicians.
We turn now to the bequest to the wife of the attorney-draftsman. Is the testatrix’ bequest to her own niece tainted by the fact that the will giving her one third of the estate was drawn by the niece’s own husband? In a cognate situation, the mere fact that a will drawn by an attorney related to the testatrix in which the attorney’s sisters were named residuary legatees and his daughter was named a contingent remainder-man has been held, before Matter of Putnam (supra) not to raise a "presumption” of undue influence. (Matter of Connor, *682 230 App Div 163.) In such case the will was admitted to probate because of absence of evidence of undue influence. Conversely, where the testatrix left the principal part of her estate to the wife of her attorney but no blood relationship existed, an explanation by the principal legatee was required. (Matter of Bundy, 217 App Div 607.) Although an attorney who drafts a will containing a bequest to his wife or relative must be cognizant that such a will is of suspicious nature (Matter of Putnam, supra), in the case at bar where the attorney-draftsman’s wife was the natural object of the testatrix’ bounty and would have been a beneficiary of the estate in case of intestacy, and where the objectant has not proven undue influence, the suspicious nature of the bequest to the wife may be disregarded depending on the entire circumstances.
Therefore, while the gift to the attorney will be expunged because of his failure to rebut the inference, the gift to his wife is upheld and two thirds of the will will be admitted to probate. "Reason and authority compel the conclusion that parts of a will may be admitted to probate, while another part is denied probate on ground of either fraud or undue influence.” (Matter of Maguire, 105 Misc 433, 434; accord, Riggs v Palmer, 115 NY 506, 512; Matter of Satterlee, remanded for new trial as undue influence generally, 281 App Div 251; Matter of Thorn, 153 Misc 28, 29; Matter of Weinstock, 78 Misc 2d 182, 184, supra; cf. record on appeal containing charge of this court in Matter of McNamara, affd unanimously 56 AD2d 563.)
An inference may or may not be drawn at the fact finder’s sound discretion, depending on the circumstances; a presumption stands in place until rebutted. The conflicting discussions about whether a presumption disappears when rebuttal evidence is received, has no place in this area since inferences are based upon inherent probabilities. I suspect that the source of the conflict as to presumptions exists because some presumptions should also be considered as having evidentiary weight, like discretionary inferences. In any event, it is this court’s inference and finding that under all the circumstances, this testatrix would have drawn her will in favor of her two beloved named nieces for one half each of her residuary estate, except for the undue pressure placed upon her to exceed her natural blood ties by favoring one of those niece’s husband-lawyer-draftsman by an extra one third.
Finally, there remains for the court to determine who will *683 receive the attorney-draftsman’s excised share. It is the court’s determination that the attorney-draftsman’s share is an ineffective residuary bequest to him and should therefore be distributed proportionately among the other residuary legatees (EPTL 3-3.4). EPTL 3-3.4 was enacted to abolish the rule at common law "that a gift of 'a residue of a residue’ is not to be augmented by the lapse of another gift out of the general residuum” (see Oliver v Wells, 254 NY 451, 457, citing Wright v Wright, 225 NY 329, 340). By virtue of the statute, unless a valid alternative disposition has been made in the will, an ineffective part of a residuary disposition "shall pass to and vest in the remaining residuary * * * beneficiaries, ratably” (EPTL 3-3.4).
This statute has enacted what this court infers and finds to have been the testatrix’ intent if freed of undue influence. Had the attorney-draftsman not benefited himself and his wife (testatrix’ niece) to the extent of two thirds of the residue, his explanation might have satisfied the court. This court is finding that if the testatrix had not been influenced unduly she would have freely given half her residuary estate to each of her two nieces named to take each one third, without the influence of the attorney-husband-draftsman. If not so unduly influenced, it is found that the testatrix would have intended to benefit the attorney-draftsman’s family by one half, not two thirds.
In finding that the attorney’s bequest will be shared equally by the two other residuary legatees, this court acknowledges the rationale offered by the Second Temporary Commission on Estates (Second Report of Temporary State Comm, on Modernization. Revision and Simplification of Law of Estates, pp 448, 452) for the enactment of EPTL 3-3.4. The result is in accord with both the presumption against intestacy and the intent of the testator. One who writes a will, it is assumed, does so in order to rearrange the laws of intestacy otherwise applicable.
Mindful that the attorney may ultimately benefit from one half of the legacy which has been given to his wife, this court is satisfied that the result is equitable because the testatrix is found to have intended to benefit his wife by so much and no more. Nonetheless, the result should serve as an express precautionary reminder to attorneys who are not aware of these problems.
Submit decree on notice admitting the will to probate in accordance herewith.