OPINION OF THE COURT
Titone, J.
The objectant in this probate proceeding, the testatrix’ sister, contends that the testatrix’ will is invalid because it was the product of fraud and undue influence on the part of the testatrix’ attorney, the will’s primary beneficiary. At this point in the litigation, the only issue is whether the objectant’s allegations are sufficient to warrant a hearing into the validity of her claim. Although the attorney-legatee was not the actual drafter of the will, the objectant argues that she is entitled to a hearing solely by virtue of his long-term professional relationship with the testatrix and his discussions with the testatrix about her testamentary plans. While we reject this aspect of the objectant’s contention, we nonetheless conclude that, under the particular circumstances of this case, the objectant should be afforded a hearing.
In July of 1987, Christine Henderson, the decedent, asked *391 her long-time attorney and financial adviser, Irvin Husin, to prepare her will and designate himself and his family as major beneficiaries. Sensitive to the suspicion with which such a will would be viewed, Husin declined, suggesting that the decedent contact the Nassau County Bar Association’s Lawyer’s Referral Service for the name of a local attorney to prepare the will. Husin subsequently sent Henderson a four-page memo confirming his inability, for ethical reasons, to draft a will in which he and his family were to be major beneficiaries. In this memo, Husin also reviewed Henderson’s assets, discussed the likely tax and administration expenses that would ultimately be subtracted from her estate, listed her potential beneficiaries, including himself and members of his family, and suggested that she consider leaving her sister a substantial bequest despite the dispute the two women were then having. Finally, Husin recommended that Henderson show the memo to the new attorney she retained and "tell him what disposition [she] want[ed] to make of [he]r estate.”
Pursuant to Husin’s suggestion, Henderson contacted the Nassau County Bar Association and was referred to Martin Weinstein, who agreed to draft her will. According to Weinstein’s subsequently taken deposition, he prepared the will based principally upon Husin’s memo and a brief meeting he had with Henderson. Weinstein never questioned Henderson in detail about the reasons for the unusually large bequest to Husin, his family and his law partner or about the nature of the quarrel that had led her to virtually disinherit her sister.
After Henderson died, her sister, the sole potential distributee, objected to the admission of Henderson’s will to probate on grounds of fraud and undue influence. In support of her position, the objectant argued that "the legal inferences which arise under * * * Matter of Putnam [257 NY 140]” should be applied in these circumstances. The Surrogate’s Court denied in part a cross motion by the will’s proponent for summary judgment dismissing the objections. The court concluded that the facts in the case warranted a hearing on the objectant’s fraud and undue influence claim. On the proponent’s appeal, however, the Appellate Division reversed and dismissed the remaining objection. Concluding that the inference derived from Matter of Putnam (supra) is not applicable in these circumstances and that there was no concrete evidence of fraud or undue influence, the Court held that the *392 objectant’s submissions had failed to raise a triable question of fact (175 AD2d 804).[1]
In Matter of Putnam (supra, at 143), this Court held that, in the absence of an explanation, an inference of undue influence arises when an attorney has drafted a will in which he or she is a beneficiary. The rule is premised on the confidential nature of the attorney-client relationship, which places the attorney in a position to exercise undue influence over the testator (see, Turano and Radigan, New York Estate Administration, at 106-107; Groppe, The "New” Putnam Rule: Problems Facing the Attorney/Legatee/Fiduciary, 61 NY St BJ 18, 19). Indeed, the Code of Professional Responsibility suggests that an attorney who accepts a substantial gift from a client "is peculiarly susceptible to the charge that he [or she] unduly influenced or overreached the client” (Code of Professional Responsibility EC 5-5).
Since Putnam was decided, the lower courts of this State have applied its theory to situations involving doctors (Matter of Satterlee, 281 App Div 251), dentists (Estate of Sackett, NYU, Mar. 28, 1988, at 55, col 3), nurses (Matter of Rudge, NYU, May 13, 1983, at 16, col 6; see also, Hazel v Sacco, 52 AD2d 1042), clergy (Matter of Jones, NYU, Dec. 16, 1986, at 12, col 6; see also, Matter of Eckert, 93 Misc 2d 677, 680) and accountants (Matter of Collins, 124 AD2d 48). However, there are no decisions of this Court applying the Putnam theory to situations such as this one, where the attorney-legatee did not actually draft the testamentary instrument.
There exist sound reasons for avoiding a per se rule that would create an inference of undue influence any time a testamentary disposition is made to an attorney who has had a professional relationship with the testator in the past. A basic tenet in our system is that "[a] person of sound mind, acting with full knowledge of her affairs, competent to understand her relations to those whom she wished to benefit, may bestow her bounty as she likes” (Loder v Whelpley, 111 NY *393 239, 250). A testator’s freedom to bequeath property in accordance with his or her wishes should not be diminished merely because the object of the testator’s generosity happens to be an attorney with whom the testator has enjoyed a beneficial professional relationship (see generally, Annotation, Wills: Undue Influence in Gift to Testator’s Attorney, 19 ALR3d 575, § 3). Attorneys often extend themselves on behalf of their long-time clients, and such "[a]cts of kindness and consideration” do not by themselves "constitute undue influence” when they "evok[e] reciprocal sentiments of gratitude and affection” by the client (Matter of Guidi, 259 App Div 652, 656, affd 284 NY 680 [check]). Accordingly, as the Appellate Division correctly concluded, the Putnam inference of undue influence should not automatically be applied where an attorney-legatee has had a professional relationship with the testator but was not the attorney who drafted the testamentary instrument.
However, contrary to the Appellate Division’s holding, the inapplicability of the Putnam inference does not end the inquiry here. The issue before the Surrogate’s Court on the proponent’s motion was whether the allegations in the objectant’s motion papers were sufficient to raise a triable question of fact on her claim of fraud and undue influence. While no Putnam inference automatically arises to aid the objectant in meeting her burden when an attorney-legatee has not drafted the will, other facts and circumstances in this case justified the Surrogate’s decision to grant the objectant a hearing (see, SCPA 1408 [1]; see also, Matter of Pollock, 64 NY2d 1156).
Ordinarily, most concerns which may arise from the existence of a prior confidential relationship between the testator and the attorney-legatee may be quieted when the will has been drafted by an independent attorney who consulted with the testator and provided disinterested legal advice. In this case, however, the retention of Martin Weinstein, Esq., who actually drafted the will and had been located by the testatrix through the auspices of the local Bar Association, does not alone eliminate the legitimate concerns that arise from Husin’s prior confidential relationship with the testatrix.
According to Weinstein’s deposition, he met briefly with Henderson before actually drafting the will, but never seriously inquired into the reasons for her decision to leave such a large portion of her assets to Husin and to virtually disinherit her sister, the person some might regard as the natural object of her bounty. Rather than conducting an independent review *394 of her personal situation, Weinstein prepared Henderson’s will primarily on the basis of Husin’s four-page memo outlining Henderson’s assets and testamentary wishes, which named Husin and his family members. Consequently, it could be inferred that Henderson did not receive the benefit of counselling by an independent attorney and that her will was essentially the indirect product of her discussions and relationship with Husin.
In such circumstances, the crucial element of discrete independent representation by disinterested counsel may be lacking. Thus, even without regard to the Putnam inference, the Surrogate’s Court was justified in deciding to allow a hearing to determine whether Husin exercised undue influence over Henderson in the discussions surrounding the preparation of her will, particularly in light of the size of the bequest to Husin[2] and the virtual exclusion of a natural object of the testatrix’ bounty (see, Matter of Putnam, supra; Matter of Anna, 248 NY 421; Post v Mason, 91 NY 539; Matter of Wharton, 270 App Div 670).
As this Court has previously observed, a question of undue influence often arises when a person in a position of trust and confidence becomes the object of the other party’s generosity (see, e.g., Ten Eyck v Whitbeck, 156 NY 341, 353). "[W]here a fiduciary relationship exists between parties, 'transactions between them are scrutinized with extreme vigilance’ ” (Matter of Gordon v Bialystoker Ctr., 45 NY2d 692, 698, quoting Ten Eyck v Whitbeck, supra, at 353). Such scrutiny is especially important when attorney-beneficiaries are involved, since the intensely personal nature of the attorney-client relationship, coupled with the specialized training and knowledge that attorneys have, places attorneys in positions that are uniquely suited to exercising a powerful influence over their clients’ decision. While most attorneys exercise that power with scrupulous honesty, the risk of undue persuasion is sufficiently substantial as to justify judicial inquiry, at least where, as here, there may have been no meaningful consultation or intervention by independent counsel.
Accordingly, objectant’s appeal, insofar as it pertains to the denial of the motion to disqualify proponent’s counsel should *395 be dismissed for nonfinality; on the appeal from so much of the order as pertained to the objections to the will alleging fraud and undue influence, the order of the Appellate Division should be reversed, with costs, and that branch of the proponent’s cross motion for summary judgment denied.
Acting Chief Judge Simons and Judges Kaye, Hancock, Jr., Bellacosa and Smith concur.
Objectant’s appeal, insofar as taken from that portion of the Appellate Division order which reversed so much of the order of Surrogate’s Court as granted objectant’s motion to disqualify proponent’s counsel and denied the motion, dismissed upon the ground that that portion of the order appealed from does not finally determine the proceeding within the meaning of the Constitution. On objectant’s appeal from that portion of the Appellate Division order which reversed so much of Surrogate’s Court’s order as denied that branch of proponent’s cross motion for summary judgment seeking to dismiss the objection to the will which alleged fraud and undue influence and granted that branch of the cross motion, order reversed, with costs, and that part of the proponent’s cross motion for summary judgment seeking to dismiss the objection to the will alleging fraud and undue influence denied.

. [2] Additionally, the Appellate Division reversed that part of the order of Surrogate’s Court which granted objectant’s motion to disqualify the proponent’s counsel (175 AD2d, at 805, citing People v Papemo, 54 NY2d 294). Inasmuch as an order granting or denying a motion to disqualify counsel is one that merely administers the course of the litigation, it is nonfinal (see, Cohen and Karger, Powers of the New York Court of Appeals § 39). Accordingly, to the extent that the appeal seeks review of the Appellate Division’s order denying objectant’s disqualification motion, it should be dismissed.

. Henderson left an estate worth approximately $1 million. Her will gave Husin, his daughters and a granddaughter a total of 40% of that amount. Additionally, Husin was named the residuary beneficiary, bringing his total percentage of the estate to some 47%.