■ In the Matter of the Estate of PAULINE DELGATTO, Deceased. CHRISTOPHER FASULO, Appellant; NORA BRADLEY, Respondent. [950 NYS2d 738]—

In a turnover proceeding pursuant to SCPA 2103 to recover certain real property on behalf of a decedent's estate, the petitioner, as administrator c.t.a. of the decedent's estate, appeals from a decree of the Surrogate's Court, Kings County (Johnson, S.), dated June 21, 2011, which, upon a jury verdict, is in favor of Nora Bradley, inter alia, determining that title to the subject real property vested in Nora Bradley.

Ordered that the decree is affirmed, with costs.

The decedent, Pauline DelGatto, died on February 24, 2008, at the age of 92, leaving a duly executed will dated May 14, 1985. At the time of the decedent's death, all legatees mentioned in the will had predeceased her, and any right to her estate under the will had passed to two nephews who lived in Nevada, and five grandnieces and grandnephews.

Until December 2007 the decedent lived alone in her house in Bayside, Queens (hereinafter the Bayside house). The respon-

dent, Nora Bradley, lived in a nearby house on the same street. The parties stipulated that, as of 2007, Bradley had performed "many recurring household tasks" for the decedent, "including cooking, shopping, transportation, and bathing; and Nora Bradley had obtained and kept a key to Pauline DelGatto's house where she frequently slept overnight." Another neighbor also had a key and would also check in on the decedent once a day.

In December 2007 the decedent was hospitalized with a dislocated shoulder, and was discharged on January 4, 2008 to a rehabilitation facility. On or about January 9, 2008, while she was at the rehabilitation facility, the decedent consulted with an attorney, who was asked by Bradley to meet the decedent at the facility. The attorney had not previously dealt with either the decedent or Bradley. According to the attorney, the decedent told him that she wanted to give her house to Bradley, and if Bradley predeceased her, to Bradley's daughter. The attorney informed the decedent that there were three ways to accomplish that end: deeding the property to Bradley, changing her will, or setting up a trust. The decedent said that she preferred to set up a trust, because she would retain ownership of her house and, upon her death, Bradley would avoid probate costs. The attorney asked the decedent about family, and she informed him that her husband died in 1984, she had no children, and she had very little contact with her family.

On January 16, 2008, the decedent was readmitted to the hospital with an infection. On January 17, 2008, she executed the trust document in dispute. Her signature was witnessed by the attorney and a social worker at the hospital. Pursuant to the trust instrument, Bradley was appointed trustee and beneficiary in the event of the decedent's death. The decedent also executed a deed, conveying the Bayside house to the trust.

On April 2, 2008, following the decedent's death, the decedent's will was admitted to probate, and Christopher Fasulo, a grandnephew of the decedent, was granted letters of administration c.t.a. Fasulo (hereinafter the petitioner) then petitioned pursuant to SCPA 2103 for the turnover of the Bayside house, an asset of the decedent which had been transferred to the trust. The petitioner alleged that the decedent executed the living trust while she was not mentally competent and was subjected to undue influence.

The petitioner moved for summary judgment on the petition, Bradley cross-moved for summary judgment dismissing the petition, and the Surrogate's Court denied the respective motion and cross motion. The petitioner appealed from the denial of his

motion, and this Court affirmed (*see Matter of DelGatto*, 82 AD3d 1230 [2011]).

The matter proceeded to trial before a jury. At the conclusion of the trial, the jury was instructed that the petitioner bore the burden of proof both as to whether the decedent lacked mental capacity when she executed the trust and deed on January 17, 2008, and whether the decedent's execution of the trust and deed was the result of Bradley's undue influence. The jury found that the petitioner failed to sustain his burden of proof.

The general rule is that the burden of proof in a proceeding to set aside a trust instrument is upon the objecting party as to all issues, including the issue of mental competency (*see Matter of Aronoff*, 171 Misc 2d 172, 177 n 5 [1996]; *Matter of Roth*, 2006 NY Misc LEXIS 5652 [Sur Ct, Suffolk County 2006]). A trustee has no obligation to demonstrate that the grantor was competent when the trust instrument was executed; the burden on that issue is borne by the objecting party, in this case, the petitioner (*see* Carew & Friedman, *Surrogate's Practice and Proceedings*, NYLJ, Apr. 18, 2007 at 3, col 1; *Matter of Aronoff*, 171 Misc 2d at 177 n 5). This principle is consistent with case law holding that competence to engage in a transaction is presumed, and the objecting party must prove lack of competence (*see Jones v Jones*, 137 NY 610, 613 [1893]; *Matter of Nealon*, 57 AD3d 1325, 1327 [2008]; *Matter of Lee*, 294 AD2d 366, 367 [2002]; *Schlage v Barrett*, 259 AD2d 691, 692 [1999]; *Matter of Waldron*, 240 AD2d 507, 508 [1997]; *Feiden v Feiden*, 151 AD2d 889 [1989]).

Here, the petitioner failed to meet his burden of establishing the decedent's lack of mental competence. There was no evidence that the decedent had a history of mental impairment. She authorized the attorney to prepare the trust instrument on January 9, 2008, and was hospitalized with an infection on January 16, 2008. The testimony of the trial witnesses indicated that on January 17, 2008, when the decedent executed the documents, she was lucid and coherent and understood the transactions in issue. In support of his claim that the decedent was not competent, the petitioner relied upon the testimony of experts who did not know the decedent and never treated her, and based their testimony upon an examination of the decedent's medical records. Such testimony is considered speculative and entitled to little, if any, weight (*see Matter of Tracy*, 221 AD2d 643, 644 [1995]; *Matter of Chiurazzi*, 296 AD2d 406, 407 [2002]).

With respect to undue influence, the burden of proof generally lies with the party asserting undue influence (*see Matter of Walther*, 6 NY2d 49, 53 [1959]; *Matter of Caruso*, 70 AD3d 937

[2010]). However, where there is a confidential relationship between the beneficiary and the grantor, "[a]n inference of undue influence" arises which requires the beneficiary to come forward with an explanation of the circumstances of the transaction (*Matter of Neenan*, 35 AD3d 475, 476 [2006]; *see Matter of Bach*, 133 AD2d 455 [1987]; *Matter of Collins*, 124 AD2d 48, 54 [1987]; *see also Matter of Henderson*, 80 NY2d 388, 391 [1992]). In the absence of an explanation, the beneficiary has the burden of proving by clear and convincing evidence that the transaction was fair and free from undue influence (*see Matter of Gordon v Bialystoker Ctr. & Bikur Cholim*, 45 NY2d 692 [1978]; *Hearst v Hearst*, 50 AD3d 959 [2008]; *Sepulveda v Aviles*, 308 AD2d 1, 11 [2003]; *Matter of Connelly*, 193 AD2d 602, 603 [1993]).

Here, the circumstances of the transfer and the decedent's reasons therefor were explained. The trust instrument and the deed were executed under the supervision of an attorney, with formalities similar to the execution of a will (*see* EPTL 7-1.7; *cf. Matter of Connelly*, 193 AD2d at 603). Further, the decedent's immediate relatives had predeceased her, and she had little contact with the beneficiaries of her will, while she had frequent contact with her friend and neighbor Bradley, upon whom she relied for care and support. Under these circumstances, the ultimate burden of proof as to undue influence did not shift to Bradley (*see Matter of Neenan*, 35 AD3d at 476; *Matter of Collins*, 124 AD2d at 54; 2 Harris, New York Estates: Probate, Administration and Litigation § 24:271 [6th ed]). Contrary to the petitioner's contention, he presented no evidence of undue influence or other wrongdoing on the part of Bradley (*see Matter of Kumstar*, 66 NY2d 691 [1985]; *Matter of Walther*, 6 NY2d 49 [1959]).

The petitioner contends that the testimony of the attorney who prepared and supervised the execution of the trust instrument and related documents was inadmissible by virtue of the attorney-client privilege (*see* CPLR 4503). However, the petitioner, as the decedent's personal representative, impliedly waived the privilege when he challenged the validity of the trust and related documents (*see Clark v Clark*, 93 AD3d 812, 816 [2012]; *Matter of Maikowski*, 24 AD3d 258 [2005]). Further, the testimony of a social worker who witnessed the decedent's execution of the trust instrument was properly admitted pursuant to CPLR 4508, since her testimony did not relate to confidential communications with the decedent in her professional capacity as a social worker (*see Doe v Poe*, 92 NY2d 864, 867 [1998]).

The petitioner's remaining contentions are either unpreserved for appellate review or without merit. Dillon, J.P., Belen, Austin and Sgroi, JJ., concur.