*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 30, 2014          518715
                                                518947
_____

In the Matter of the Estate of
    SUSAN G. VOSILLA, Deceased.

ANTHONY C. BUCCA, as Executor
    of the Estate of SUSAN G.            MEMORANDUM AND ORDER
    VOSILLA, Deceased,
                    Respondent;

DORIA McGUNNIGLE,
                    Appellant.
_____

Calendar Date:   September 12, 2014

Before:  Peters, P.J., Stein, Garry, Egan Jr. and Clark, JJ.

_____

        Whiteman Osterman & Hanna, LLP, Albany (William S. Nolan of
counsel), for appellant.

        David E. Woodin, Catskill, for respondent.

_____

Stein, J.

        Appeals (1) from an order of the Surrogate's Court of
Greene County (Bartlett III, S.), entered January 28, 2014,
which, among other things, granted petitioner's motion for
summary judgment dismissing respondent's objections to decedent's
will, and (2) from an order of said court, entered April 23, 2014
in Greene County, which, among other things, denied respondent's
motion to reopen a prior hearing.

        On December 21, 2010, Susan G. Vosilla (hereinafter
decedent) executed a last will and testament and supplemental

needs trust that named petitioner (decedent's friend and attorney) as executor of the will and trustee of the trust, made bequests to certain relatives and friends and, as a result of a history of discord and animosity between decedent and respondent, her sister, expressly disinherited respondent. Decedent thereafter died on September 15, 2011, survived by respondent and several other relatives. Within weeks of decedent's death, petitioner filed a probate petition and, shortly thereafter, respondent filed objections thereto, challenging decedent's testamentary capacity and alleging that she was subject to undue influence by petitioner.

Preliminary letters testamentary were issued to petitioner and an SCPA 1404 proceeding ensued, during which petitioner testified and procured testimony from Martin Finn, the attorney who drafted the will, and Julie Morin, Finn's paralegal, both of whom were witnesses to the execution of the will. Two months after the close of the SCPA 1404 hearing, petitioner moved for summary judgment dismissing the objections filed by respondent and to admit the will to probate. Over respondent's opposition, Surrogate's Court found that there were no genuine issues of fact, denied respondent's objections and granted the motion for summary judgment allowing the will to proceed to probate. Respondent subsequently moved to reopen the SCPA 1404 hearing, alleging newly discovered evidence and improper conduct by petitioner as an adverse party (see CPLR 5015 [a] [2], [3]). Surrogate's Court, among other things, denied the motion, and respondent now appeals from both the order granting summary judgment and the order denying her motion to reopen the hearing.

We affirm. "Whether to dismiss a party's objections and admit the challenged will to probate is a matter committed to the sound discretion of Surrogate's Court and, absent an abuse of that discretion, the court's decision will not be disturbed" (Matter of Stafford, 111 AD3d 1216, 1217 [2013], lv denied 990 NYS2d 161 [2014]; see Matter of Shapiro, 100 AD3d 1242, 1243 [2012]; Matter of Colverd, 52 AD3d 971, 972 [2008]; see generally Matter of Doody, 79 AD3d 1380, 1381 [2010]). While rare, summary judgment in a contested probate proceeding is appropriate where a petitioner establishes a prima facie case for probate and the

objectant does not raise any factual issues regarding
testamentary capacity, execution of the will, undue influence or
fraud (see Matter of Stafford, 111 AD3d at 1217; Matter of
Colverd, 52 AD3d at 972; Matter of Nofal, 35 AD3d 1132, 1133
[2006]; see also Matter of Cioffi, 117 AD2d 860, 860-861 [1986];
cf. Matter of Paigo, 53 AD3d 836, 838 [2008]).  Upon our review
of the record, we find that respondent has raised no such issues
and we, therefore, conclude that Surrogate's Court properly
awarded summary judgment to petitioner.

        As to testamentary capacity, petitioner bore the initial
burden of establishing that decedent understood the nature and
consequences of making the will, the nature and extent of her
property, and the natural objects of her bounty (see Matter of
Kumstar, 66 NY2d 691, 692 [1985]; Matter of Prevratil, 121 AD3d
137, 140-141 [2014]; Matter of Walker, 80 AD3d 865, 866 [2011],
lv denied 16 NY3d 711 [2011]; Matter of Ruparshek, 36 AD3d 998,
999 [2007]).  Notably, it was only necessary to demonstrate that
decedent had "a general, rather than a precise, knowledge of the
assets in . . . her estate" (Matter of Walker, 80 AD3d at 867).

        Here, petitioner proffered, among other things, the self-
proving affidavits of Finn and Morin, each of whom declared that
decedent was "of sound mind, memory and understanding, under no
constraint, duress, fraud or undue influence, and in no respect
incompetent to make a valid [l]ast [w]ill and [t]estament."  Such
evidence "constituted prima facie evidence of the facts attested
to and created a presumption of testamentary capacity" (Matter of
Prevratil, 121 AD3d at 141; see Matter of Walker, 80 AD3d at
866).  In a separate affidavit, Finn also averred that, at the
time that decedent signed the will, she "was oriented to person,
place, and time, had an understanding of the natural objects of
her bounty and, further, had an awareness of her present assets
and potential future assets."  Finn further alleged that decedent
made it clear that she had an acrimonious relationship with
respondent — her only sibling — and did not wish to provide for
respondent in her will; Finn and Morin also testified similarly
at the SCPA 1404 hearing.

Petitioner also proffered an affidavit from attorney Robin Depuy-Shanley, who was the court evaluator in a Mental Hygiene Law article 81 guardianship proceeding concerning decedent that had been commenced by petitioner two months prior to the execution of the will.[1]  Although Depuy-Shanley prepared a report in the context of that proceeding in which she concluded that decedent required assistance with property management, she opined in her affidavit that, when she met with decedent in October and November 2010 — a month or two before the execution of the will — decedent possessed testamentary capacity, as she was well aware of the substantial assets that she received as a result of her mother's death and of the natural objects of her bounty.

In addition, petitioner submitted an affidavit from Janet Schwarzenegger, the attorney who petitioner initially contacted in November 2010 to draft decedent's will.[2]  According to Schwarzenegger, the first time that she met with decedent, petitioner was not present and decedent clearly explained how she wanted her assets to be distributed, including a 17.5% share to petitioner's wife and a modest bequest to petitioner to help defray the costs of caring for her pets.  Schwarzenegger also averred that, during all of her subsequent interactions with decedent, decedent demonstrated a clear understanding of how she

---

[1]  Immediately after the death of decedent's mother, decedent contacted petitioner and asked for his assistance out of concern that she would be unable to appropriately manage the substantial assets that she was about to inherit.  Based on her familiarity with guardianship proceedings concerning her mother, decedent inquired of petitioner whether he would act as her guardian.  Thus, with decedent's approval, petitioner filed a Mental Hygiene Law article 81 proceeding requesting that he be appointed guardian over decedent's property.  Petitioner later withdrew the guardianship petition after determining that a trust was better suited to protect decedent and her assets.

[2]  Although Schwarzenegger drafted a will, inasmuch as Finn was preparing the trust document, it was ultimately determined that Finn would also prepare a coordinated will.

wished her property to be distributed, and, in particular, was adamant that she did not want her sister to benefit from her estate. At no time did Schwarzenegger have reason to question decedent's testamentary capacity. The foregoing, together with additional proof proffered by petitioner in support of the motion, constituted prima facie evidence of decedent's testamentary capacity (see Matter of Prevratil, 121 AD3d at 141; Matter of Walker, 80 AD3d at 866), shifting the burden to respondent to demonstrate a triable issue of fact (see Matter of Prevratil, 121 AD3d at 141).

To that end, respondent relied on an attorney's affidavit and argued that decedent had a history of various medical and psychological conditions that required treatment. Even assuming the existence of such conditions, these unsupported allegations were insufficient to create a question of fact, as "'the appropriate inquiry is whether the decedent was lucid and rational' at the time the will was signed" (id., quoting Matter of Paigo, 53 AD3d at 838).[3] We are also unpersuaded by respondent's contention that the guardianship petition brought by petitioner is sufficient to raise a question of fact as to decedent's testamentary capacity. The sole purpose of that petition — which was subsequently withdrawn — was to seek appointment of a guardian over decedent's property, as a result of decedent's own concerns that she did not have the necessary experience to manage the substantial inheritance that she was going to receive from her mother and her wish to protect such assets. Such inexperience and desire to safeguard her inheritance does not demonstrate that decedent lacked testamentary capacity. Inasmuch as respondent failed to raise an issue of fact with respect to decedent's testamentary capacity, Surrogate's Court properly granted summary judgment dismissing the objection on that ground (see Matter of Prevratil, 121 AD3d at 141; Matter of Walker, 80 AD3d at 867; compare Matter of

_____

[3] Contrary to respondent's assertion, petitioner was not required to submit an independent medical report in order to establish decedent's testamentary capacity (see Matter of Doody, 79 AD3d at 1381).

Paigo, 53 AD3d at 839).

Turning to respondent's second objection, the fact that a decedent was subject to undue influence is established when he or she "'was actually constrained to act against [his or her] own free will and desire by identifying the motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred'" (Matter of Stafford, 111 AD3d at 1217, quoting Matter of Colverd, 52 AD3d at 973). Here, notwithstanding the confidential relationship between decedent and petitioner (see Matter of Henderson, 80 NY2d 388, 392-393 [1992]; see also Matter of Graeve, 113 AD3d 983, 984 [2014]), the record is bereft of any direct or circumstantial evidence indicating that petitioner exercised undue influence over decedent (see Matter of Prevratil, 121 AD3d at 143). "On the contrary, [the evidence] indicate[s] that the will was the product of the free and unfettered act of [decedent]" (Matter of Walther, 6 NY2d 49, 54 [1959] [citation omitted]).

Our review of the record reveals that decedent had known petitioner for many years, as he had performed legal work for her father and had previously provided pro bono legal assistance to her in various criminal actions involving her relatives. After the death of her mother, decedent and her friend approached petitioner and asked for his assistance because she did not know how to manage her finances. Petitioner and decedent discussed, among other things, her need for a will and she told petitioner that she had decided on her beneficiaries, one of whom was petitioner. Petitioner advised decedent that it would be a problem for him to be a beneficiary given his position as her attorney and, when decedent could not be dissuaded from her plan, petitioner ultimately told decedent that she would need a new attorney to draft the will. As a result, decedent met with Schwarzenegger during the pendency of the guardianship proceeding, who then drafted a will based upon decedent's directives.

Decedent was present in court during the guardianship proceeding and spoke favorably about petitioner, proclaimed her trust for him and stated that she wanted him to be her guardian.

Depuy-Shanley affirmed that, based upon her observations, it was evident that there "was a genuine fondness" between decedent and petitioner and that petitioner "would act in such a way and manner so as to protect [decedent]." Other witnesses confirmed that they had similarly observed decedent's fondness and trust for petitioner and never observed him trying to pressure or influence decedent. Notably, Schwarzenegger and Finn each indicated that they discussed decedent's testamentary plan outside the presence of petitioner. In fact, Schwarzenegger "saw absolutely no indication of any undue influence being exerted upon [decedent] with respect to her testamentary dispositions by anyone, including [petitioner]."[4] Similarly, based upon his meetings with decedent, Finn — who had no prior professional relationship with petitioner — had no doubt that decedent understood the consequences of the will and that it was the product of her own design, not of any undue influence exerted by petitioner. Respondent's speculative and conclusory allegations of undue influence offered in opposition to petitioner's motion were insufficient to raise a question of fact (see Matter of Stafford, 111 AD3d at 1219) that would preclude an award of summary judgment dismissing this objection.

Respondent's challenge to Surrogate's Court denial of her motion to reopen the SCPA 1404 hearing is also unavailing. The new evidence allegedly discovered by respondent's husband following the SCPA 1404 hearing consisted entirely of matters of public record in existence prior to that hearing (see CPLR 5015 [a] [2]). We reject respondent's assertion that this evidence

_____

[4] Respondent asserts that, by referring decedent to Schwarzenegger and corresponding with Schwarzenegger about how the will should be drafted, petitioner procured the will. Notably, the will that was ultimately drafted by Schwarzenegger differed — with respect to the named beneficiaries and amounts bequeathed thereto — from petitioner's directions to Schwarzenegger. Moreover, while respondent further asserts that petitioner was negotiating with Finn on his own behalf, the interactions to which respondent refers pertained not to the will, but to the trust, which is not at issue here.

could not have been discovered in a timely fashion or that it probably would have altered the outcome of the probate proceeding (see Matter of American Comm. for Weizmann Inst. of Science v Dunn, 10 NY3d 82, 96 [2008]).  Additionally, respondent's claim of fraud or misconduct on the part of petitioner (see CPLR 5015 [a] [3]) is based entirely on petitioner's alleged conduct in the context of matters that are wholly unrelated to the instant probate proceeding.  As a result, we cannot say that Surrogate's Court abused its considerable discretion in denying respondent's motion (see Matter of McLaughlin, 111 AD3d 1185, 1186 [2013]).

Respondent's remaining contentions, including her assertion that summary judgment was premature, have been considered and are found to be lacking in merit.

Peters, P.J., Garry, Egan Jr. and Clark, JJ., concur.


ORDERED that the orders are affirmed, with costs.




ENTER:


Robert D. Mayberger
Clerk of the Court