THERESA C. GRAHAM, Respondent, *v.* JOHN GRAHAM, Appellant.

Where an agreement is made between parties standing in a confidential relation, or in a relation which gives to one party great influence over the other, and the agreement is to the advantage of the party in whom the confidence is reposed or whose influence is the dominant one, and to the detriment of the other party, the former will not be permitted to enforce the agreement unless it appears that he acted in the utmost good faith and that disclosure was made of all the material facts, or that the other party acted with a clear comprehension of the object and effect of the agreement.

This rule applies in favor of a wife in respect to an ante-nuptial contract, and the courts will regard with rigid scrutiny such a contract

where it deprives her of any prospective interest in the estate of her intended husband, and especially where no provision is made therein for her support in case she survives him.

In an action by the wife to set aside an ante-nuptial agréement, by the terms of which she surrendered all claim to dower, it appeared undisputably that defendant at the time the agreement was made owned real estate of the value of $100,000; that the relinquishment of dower was not a condition of the engagement of marriage; that there was no negotiation between the parties on that subject before they met and executed the agreement; that defendant then stated that he wanted it arranged so that he could buy and sell real estate without interference from her, but did not disclose to her that this would mean a relinquishment of her dower right; that no consideration was paid for the surrender, and that she acted without the aid of counsel. *Held*, that the General Term properly reversed on the facts a judgment of Special Term in favor of defendant; and that plaintiff was entitled to the relief sought.

Reported below, 67 Hun, 329.

(Argued October 15, 1894; decided November 27, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 24, 1893, which reversed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff against defendant, her husband, to have an ante-nuptial agreement canceled and declared void.

The facts, so far as material, are stated in the opinion.

*James A. Deering* for appellant. The ante-nuptial agreement executed between the parties to this action is a valid legal instrument and binds the parties thereto by its terms. (Story's Eq. Juris, §§ 1297, 1370 ; *Simpson v. Gutteridge*, 1 Madd. 609 ; *Naill* v. *Nann*, 25 Md. 532 ; *Jacobs* v. *Jacobs*, 42 Iowa, 600 ; *Barth* v. *Lines*, 118 Ill. 374 ; *Wentworth* v. *Wentworth*, 69 Mo. 17 ; *Findley* v. *Findley*, 11 Gratt. 434 ; *Peck* v. *Peck*, 12 R. I. 485 ; *Miller* v. *Goodwin*, 8 Gray, 542 ; *Jenkins* v. *Holt*, 109 Mass. 261 ; *Weaver* v. *Weaver*, 109 Ill. 225 ; *Andrews* v. *Andrews*,

8 Conn. 79; *Withers* v. *Weaver*, 10 Barr, 391; *Pierce* v. *Pierce*, 71 N. Y. 154; *Peevit* v. *Wilson*, 103 U. S. 22; *Herring* v. *Wickham*, 29 Gratt. 628; 4 Kent's Com. [5th ed.] 463, 494; *Sterry* v. *Arden*, 1 Johns. Ch. 261; *Huston* v. *Cantril*, 11 Leigh, 136; *Tunns* v. *Trezevant*, 2 Desaus, 264; *Whelan* v. *Whelan*, 3 Cow. 79, 538; *Maguire* v. *Thompson*, 7 Pet. 348; *Andrews* v. *Jones*, 10 Ala. 400; 14 Am. & Eng. Ency. of Law, 544; *Michael* v. *Morey*, 26 Md. 239; *Riley* v. *Riley*, 25 Conn. 154; *Brown* v. *Jones*, 1 Atk. 188; *Stileman* v. *Ashdown*, 2 id. 498; *Wheeler* v. *Caryl*, Amb. 121; *Marshall* v. *Morris*, 11 Ga. 368; *Armfield* v. *Armfield*, 1 Freem. [Miss.] 311; *Roberts* v. *Roberts*, 22 Wend. 140; *Rivers* v. *Thayer*, 7 Rich. [So. Car.] Eq. 136; *Neves* v. *Scott*, 9 How. [U. S.] 196.) The court below erroneously reversed the action of the Special Term on the question of fact in the case. (*Swazey* v. *Berger*, 125 N. Y. 677; *Kemp* v. *Peck*, 35 N. Y. S. R. 780; *Van Der Zee* v. *Herman*, 35 id. 778; *Crim* v. *Starkweather*, 36 id. 314; *Phillips* v. *Meily*, 106 Penn. St. 536; *Thomas* v. *Loose*, 114 id. 35; *Kessler's Estate*, 143 id. 386; *Smith* v. *Brush*, 1 Johns. Ch. 459; *Walton* v. *Hobbs*, 2 Atk. 19; *Sullivan* v. *Bates*, 1 Litt. 41; *Flagg* v. *Mann*, 2 Sumn. 486, 550.)

*George Bliss* for respondent. The paper is absolutely without validity. Under the statute, to make a release of dower by an intended wife of any force, there must be a pecuniary provision for her benefit in lieu of dower. (1 R. S. 741, §§ 9, 10, 11, 12, 13, 14; *Ennis* v *Ennis*, 48 Hun, 11; *McCartie* v. *Teller*, 2 Paige, 571; *Hawley* v. *James*, 5 id. 318; *Jones* v. *Fleming*, 104 N. Y. 418.) The decision of the trial justice was wrong, and was properly reversed at General Term because it is clear that, whether the paper was read to her or not, Mrs. Graham did not understand the meaning of the paper she signed, while to make such a paper valid it is peculiarly necessary that it should be proved beyond all question that it was executed with full understanding of its effect. And where the provision is disproportionate and inadequate

the burthen is on the husband to show good faith. (*Pierce* v. *Pierce*, 71 N. Y. 154.)

ANDREWS, Ch. J.   The order of the General Term from which the appeal is taken reversed, both on the facts and law, the judgment in favor of the defendant, entered upon the decision of the Special Term.   The trial judge found that the ante-nuptial agreement was executed by the plaintiff voluntarily and understandingly, and was valid and binding both in law and equity.   The judgment followed the decision and dismissed the complaint on the merits.   The General Term held that the agreement by which the plaintiff, without any consideration except that arising out of the contemplated marriage between the parties, consented to release and discharge all claim to dower in the estate of the defendant in case she survived him, and that she would make no claim to any share in his personal estate, unless under his will or some act done by him subsequent to the execution of the agreement, was void.   This conclusion was placed upon the ground that an agreement by which a woman in contemplation of marriage surrendered any future right to dower in the estate of her intended husband which might accrue to her on the marriage, required for its support a pecuniary provision, in property or money, under the statutes relating to jointures (1 Rev. St. 741, §§ 10, 11, 12, 13), and that marriage alone was not a sufficient consideration.   The General Term further decided that, conceding the validity of an ante-nuptial agreement for the release of dower, based on the consideration of marriage, and in the absence of any pecuniary provision, the judgment should, nevertheless, be reversed and the case be remitted for a new trial, for the reason that the evidence did not satisfy the appellate court upon the point that the agreement in question was executed by the plaintiff with an understanding of its effect, and that the law which casts upon a husband claiming under such an agreement the burden of showing that the intended wife was advised of and understood the nature and effect of the agreement when

she executed it, had not been satisfactorily discharged. If the General Term was justified in reversing the judgment, under the rules which govern the exercise of its appellate jurisdiction, to reverse the judgment and grant a new trial upon the facts, then the order of the General Term must be affirmed, irrespective of what our view might be upon the question of law determined by that court, because on the other branch of the case the order of reversal must be upheld. By the terms of the agreement of July 3, 1890, the plaintiff, between whom and the defendant a contract of marriage had existed from sometime in June, surrendered without any pecuniary consideration whatever the valuable interest which, on the marriage, she would acquire as wife in the real estate of her intended husband. That this was to her an important transaction is shown by the conceded fact that the defendant was the possessor of real estate of the value of $100,000, and that the value of the plaintiff's inchoate right of dower therein on her marriage (two days after the agreement was made) would have been, except for her release, at least $8,900. The subject of dower had never been broached between the parties prior to the very occasion when she was called upon to execute the agreement, nor is it claimed that the subject of a marriage settlement was ever suggested by either. The first suggestion of the propriety of any ante-nuptial agreement came from the defendant on the Sunday evening preceding the Thursday when the agreement in question was executed. The defendant states the conversation between himself and the plaintiff as follows: "I told her I would like to have my real estate matters fixed up, so I would have nobody interfering, so that I could use it freely whenever I would like, sell it or buy real estate, and nobody to interfere." She said, "All right." The plaintiff, referring to this conversation, testified: "He said, 'If we are going to be married I think it necessary that you should see a lawyer.' I said, 'Well, I don't think so.' He said, 'Business is business.' I said, 'My marriage is not business. I have nothing to see a lawyer about.' He said, 'Well, you come and see mine,' and I said, 'Certainly I will.' He

did not tell me why he wanted me to go and see a lawyer; he did not say anything about signing any papers."

Both parties were fully examined on the trial. The defendant did not deny any part of the plaintiff's testimony on the subject of the conversation on Sunday evening. It is uncontradicted that the subject of dower was never in terms referred to between the parties before the agreement was executed and there was no negotiation between them on the subject. The defendant, according to his testimony, did inform the plaintiff that the purpose of consulting a lawyer was to have it arranged so that he could buy and sell real estate " and nobody to interfere." This might have led a person acquainted with legal matters to understand that it related to an arrangement about dower, but at best the reference was vague and would not be likely to be understood by the plaintiff. The evidence is uncontradicted that after this conversation and without any further conversation or consultation with the plaintiff, the defendant instructed his attorney to draw up an ante-nuptial agreement between the parties, whereby, in consideration of the sum of $5,000, to be paid the plaintiff by the defendant, she consented to discharge all claim of dower in his estate and to any share of his personal property, unless given her by his will or other act of the defendant. Neither the sum of $5,000 nor any other sum had been mentioned between the parties, nor had the subject of a pecuniary provision for the wife been suggested between them. On the day fixed by the defendant the parties met at the office of the defendant's attorney. There is some conflict of testimony as to what occurred on that occasion. It is conceded that when the sum of $5,000 was mentioned as intended to be given to the plaintiff, she refused to receive it, saying, " I can't have any money mixed up with my marriage." The parties then left the office of the attorney to return when a new paper should be prepared. They returned to the office after an hour or more and then another instrument similar to the first one, except in the expression of the consideration, was executed, which is the agreement in question. The plaintiff testifies

that the subject of dower was not mentioned in the conversation on that occasion, and that the paper was hurriedly read over to her and executed, and that she did not understand that she was releasing her dower or any right in the estate of the defendant. She said : " My understanding of the nature of the papers which I signed was to give Mr. Graham full control of his business ; " and again : " I understood I was giving my husband full control of his property free from any interference with me." She also testified that she did not understand the legal meaning of dower. The defendant in his testimony did not claim that anything was said on the subject of dower when the agreement was executed. The attorney for the defendant was a witness in his behalf, and in his testimony occurs the only contradiction to the testimony of the plaintiff on this subject. He testified that when reading the first instrument when he came to the $5,000 clause she said, " Oh, no. I don't want any money," and when he finished reading she said, " The paper is all right with the exception of the $5,000. I will not take any of Mr. Graham's money ; I am not marrying him for money." Mr. Graham said, " Well, I won't carry out the ceremony unless you release your dower in my property." She said, " I am willing to, but I don't want to take any money." There seems to be no appropriate relation between this declaration of Mr. Graham, to which the attorney testified, and the conversation which preceded it, in which the plaintiff is represented as acquiescing in the proposed arrangement with the exception stated. We have referred in some detail to the main evidence bearing upon the question whether the plaintiff executed the ante-nuptial agreement understandingly. It is an important general rule which does not permit a formal written agreement to be set aside or disregarded without strong evidence of fraud or mistake. But where an agreement is made between parties standing in a confidential relation, or in a relation which gives to one party great influence over the other, and the agreement is to the advantage of the party in whom the confidence is reposed, or whose influence is the

dominant one, and to the detriment of the other party, the former will not be permitted to enforce the agreement unless it appears that his conduct was characterized with the utmost good faith, and that disclosure was made of all the material facts, or that the other party acted with a clear comprehension of the object and effect of the agreement made. This rule has been applied in favor of the wife in respect to ante-nuptial contracts. The relations between the intended wife and her future husband are regarded as confidential and naturally give to the man great influence over the woman with whom he has entered into an engagement of marriage. The courts regard with rigid scrutiny an ante-nuptial contract which deprives her of any prospective interest in the estate of her intended husband, and especially is this required in a case where such relinquishment on her part is made without any provision for her support in case she survives him. (*Pierce* v. *Pierce*, 71 N. Y. 154; *Kline* v. *Kline*, 57 Pa. St. 120; *S. C.*, 64 id. 122.)

It cannot be said that in this case there is no evidence that the plaintiff understood the transaction. But to summarize what has been said these facts are substantially undisputed (1) the relinquishment of dower was not a condition of the engagement of marriage; (2) there was no negotiation between the parties on the subject before they met and executed the agreement; (3) the defendant, in the conversation between himself and the plaintiff, did not disclose to her that an arrangement to give him the right to control his business and buy and sell real estate without interference would mean a relinquishment of her dower right; (4) she received no pecuniary equivalent for the surrender of her right. The evidence of the attorney for the defendant and of his clerk, who took the acknowledgment of the instrument, warrant an inference that she understood its purpose. But she expressly denies their testimony in material points; and even if dower was spoken of on the occasion of the execution of the instrument she may not have understood its legal significance, and she testifies that she did not understand it. She acted without the aid of counsel, and con-

cededly not in pursuance of any prior understanding with her husband, of which this specific agreement was the outcome.

We think the General Term was justified in reversing the judgment on the facts. The order should, therefore, be affirmed and judgment absolute entered in pursuance of the stipulation.

All concur.

Ordered accordingly.