OPINION OF THE COURT
 

 Jones, J.
 

 In this action to recover property transferred as a gift to a charitable nursing home for the elderly and infirm by one of its patients, the donee bears the burden of proving by clear and convincing evidence that the gift was voluntarily and
 
 *696
 
 understandingly made by the donor, uninfluenced by fraud, duress or coercion.
 

 By this action the administrator of the estate of Ida Gorodetsky seeks to recover from the nursing home in which Ida was a resident at the time of her death the balance of funds transferred to the home by Ida less than a month preceding her death, over and above the cost of care provided to her during her 22-day stay at the nursing home and her funeral expenses.
 

 Evidence produced at the trial, without a jury, disclosed that on August 8, 1972 the decedent, Ida, who was 85 years old and had lived alone for the past 10 years, was admitted to Brooklyn-Cumberland Hospital after having suffered a stroke with resulting partial paralysis. (The social worker assigned to her at the hospital later learned that she had two brothers and a niece but that the relatives had not been close to her; the niece stated that neither she nor her father had seen Ida for at least 10 years.) The attending physician at the hospital, who saw the patient daily from the time of admission to her removal to the infirmary of defendant nursing home on November 13, 1972, testified that she was confused, drowsy and at times semicomatose, partially paralyzed, unresponsive and uncooperative, sometimes required to be restrained for her own safety and of impaired hearing. He stated that she was not coherent, could not be understood and was not capable herself of understanding. There was little change in her condition during the entire period of her stay at the hospital.
 

 At the suggestion of an acquaintance of Ida, in October, 1972 defendant nursing home, with which decedent had had no prior association, sent one of its staff social workers to the hospital to see the elderly lady. After the nursing home had learned that Ida had funds of her own the director sent the social worker back to see Ida again on November 3, 1972 for the purpose of having a withdrawal slip signed by the decedent so that funds could be obtained to pay for her care at the nursing home, a request having by then been made for her admittance to the home. At that time Ida had the sum of $27,864.46 — which represented her total assets — on deposit in the Lincoln Savings Bank. The social worker secured Ida’s mark on two withdrawal slips in the presence of two social workers at the hospital and a notary public. One withdrawal slip authorized the issuance of a check in the amount of $15,000 payable to the nursing home for the "Benefit of Ida
 
 *697
 
 Gorodetsky”. At the instruction of the executive director of the home, the social worker presented that withdrawal slip to the savings bank on November 6, 1972 and deposited the check that she received in the general fund of the home as a donation. The second withdrawal slip, made out for $14,000, was not presented to the savings bank because it exceeded the balance in Ida’s account after the $15,000 had been withdrawn.
 

 On November 13, 1972 Ida was moved to the infirmary of the nursing home and examined by the staff physician, who found that she was unable to speak, made no spontaneous movement and was paralyzed in both hands. That same day, within an hour and a half of admission, she was visited by a group consisting of the executive director of the institution, its fund raiser, one of its social workers and a notary public and was presented with a collection of instruments on each of which she placed her mark. The instruments included an application for admission to the home, an admission agreement, a withdrawal slip on the Lincoln Savings Bank in the amount of $12,864.46 (the balance in the account), an assignment to the home of the $12,864.46 in the savings account and a letter which made a donation to the nursing home of the $15,000 previously withdrawn by the issuance of a check payable to the home and which also directed that any balance of the assigned funds, after payment of fees due to the home for Ida’s care during her life and of funeral expenses, be retained by the home as a donation.
 

 Ida died on December 5, 1972 while still a resident of defendant home. The administrator of her estate, a brother, commenced this action to recover the $15,000 obtained by the home by presentation of the withdrawal slip on November 6 and the balance of the remaining funds assigned on November 13, less amounts applied to Ida’s care and funeral expenses. Supreme Court dismissed the complaint, concluding that plaintiff had failed to meet the burden of proving fraud or undue influence which the court imposed on plaintiff and also that, having failed to sustain the burden of proving that Ida did not understand the nature of her acts, plaintiff had failed to establish his right to recovery. The Appellate Division reversed and granted judgment to plaintiff, finding that, because the decedent and defendant did not act from positions of equality, only slight evidence was required to shift to defendant donee the burden of proving by clear and satisfactory
 
 *698
 
 evidence that the transfer of the claimed gift was freely and voluntarily made, and that, because a confidential relationship existed between the parties, the burden was on defendant to establish that it did not acquire decedent’s property by fraud, undue influence or coercion, which burden defendant failed to meet.
 

 The order of the Appellate Division should be affirmed.
 

 It is indisputable that on November 13, 1972, when the gift on which defendant predicates its claim to the funds in dispute was made, there existed between the donor and donee a fiduciary relationship arising from the nursing home’s assumption of complete control, care and responsibility of and for its resident. As the executive director of that institution testified at some length, the residents of the nursing home are dependent on the home "to take care in effect of their very livelihood, their existence”; they "rely upon the people in the home to take care of them * * * They have no means of taking care of themselves”, and ask and receive help from the staff of the home. According to the witness, "every one of [the residents’] particular needs * * * is administered to them by the help, the nurses or the doctors” of the home and in many instances — as was the case with the decedent — "they .have no other source of getting that kind of help and don’t get any help other than from the institution”. The acceptance of such responsibility with respect to the aged and infirm who, for substantial consideration availed themselves of the custodial care offered by the institution, resulted in the creation of a fiduciary relationship and the applicability of the law of constructive fraud. Under that doctrine, where a fiduciary relationship exists between parties, "transactions between them are scrutinized with extreme vigilance, and clear evidence is required that the transaction was understood, and that there was no fraud, mistake or undue influence. Where those relations exist there must be clear proof of the integrity and fairness of the transaction, or any instrument thus obtained will be set aside or held as invalid between the parties”
 
 (Ten Eyck v Whitbeck,
 
 156 NY 341, 353). As was said long ago, in articulating the concept of constructive fraud: "It may be stated as universally true that fraud vitiates all contracts, but as a general thing it is not presumed but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to
 
 *699
 
 render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from an overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled”
 
 (Cowee v
 
 Cornell,
 
 75
 
 NY 91, 99-100). So here, the Appellate Division properly concluded that defendant, rather than plaintiff (as the Justice at Trial Term had held), bore the burden of proof on the issue whether Ida’s gift of funds was freely, voluntarily and understandingly made. Examination of the record demonstrates without cavil the correctness of the Appellate Division’s determination that that burden had not been met.
 

 Both the Trial Justice and defendant focus on the absence of any fiduciary relationship between Ida and the nursing home on November 3, 1972.(the date on which she executed withdrawal slips for defendant’s social worker while still a patient in Brooklyn-Cumberland Hospital) and from that fact have moved to the conclusion that the burden of proof had not shifted to the nursing home. To this there are two responses. What is overlooked is the circumstance that in legal contemplation the gift of funds was not effected at that time but was completed on November 13, after the donor had become a resident at the home, when the instrument of donation was executed. Defendant’s executive director testified repeatedly that when she sent the social worker to see Ida in the hospital on November 3 to have a withdrawal slip executed it was "to get funds for the woman to stay at the home”. That the nursing home itself regarded the gift as made on November 13 is evident from the letter which the director and others presented to Ida for execution when she was admitted to the home on that date, the first paragraph of which states, "I do hereby make a donation of the sum of $15,000 to the Bialystoker Center and Bikur Cholim, Inc., also known as Bialystoker Home and Infirmary for the Aged, located at 228 East Broadway, New York, New York” and which recites the fact of her previously having executed a withdrawal slip for such sum for the issuance of a check to the home. It is
 
 *700
 
 therefore the relationship which existed on November 13, and not the absence of a relationship on November 3, which fixes the burden of proof in the present action.
 

 Beyond that, even were the donation to be viewed as having been made on November 3, there was then such an inequality of position in this instance between the hospital patient and the nursing home as to warrant the imposition on the latter of the burden of proof prescribed by the Appellate Division. The home was aware of the patient’s mental and physical infirmities and weakness. Nothing to that point had remotely suggested that the patient might be disposed to make a gift to the home, or indeed that she even knew of its existence. The parties were brought together only in contemplation of the patient’s transfer to the home; the transaction between them had no other meaning. That the patient was inescapably reposing confidence in the home from the moment of their first encounter was implicit in the circumstances.
 

 We reject out of hand defendant’s contention that, as a charitable organization, it should not be made subject to the same evidentiary burden that would be imposed on a profit-making institution. However worthy may be the objectives to which its funds are dedicated, no justification exists for relieving it of the obligation, when circumstances suggest a substantial risk of overreaching, of affirmatively demonstrating that assets it has acquired have come to it from a willing and informed donor, untainted by impermissible initiative on the part of the donee.
 

 Finally, defendant argues that reversible error was committed by the exclusion of testimony by the two social workers who were present in Ida’s hospital room on November 3 when she executed the first two withdrawal slips on her savings bank account. The trial court’s ruling was predicated on the social worker privilege created by CPLR 4508 and a conclusion that no effective waiver of the privilege had been made by plaintiff administrator. We observe that the language appearing in this section, descriptive of what the statute protects against, what material is protected and what effects a waiver, is different from that employed in other statutory sections establishing testimonial privilege (CPLR 4503, 4504, 4505, 4507). However, we find it unnecessary to consider whether the offered proof came within the protected embrace of CPLR 4508 or whether having placed Ida’s mental condition in issue, the administrator of her estate was estopped to
 
 *701
 
 raise the bar of CPLR 4508 (cf.
 
 Koump v Smith, 25
 
 NY2d 287, 294). Noting also that in our court the respondent does not address the correctness of the exclusionary ruling, we assume for purposes of the present appeal that the excluded testimony should have been received. We conclude, however, that its exclusion does not dictate a reversal. Taken in the view most favorable to the nursing home, the testimony offered, in conjunction with the other evidence in the case, was insufficient as a matter of law to sustain the burden of proof resting on the nursing home.
 

 Accordingly, there being no reversible error in the disposition at the Appellate Division, the judgment appealed from and the order of the Appellate Division thereby brought up for review should be affirmed, with costs.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
 

 Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.