*343
 
 OPINION OF THE COURT
 

 Bbllacosa, J.
 

 This appeal raises the question whether the special relationship between betrothed parties, when they execute a prenuptial agreement, can warrant a shift of the burden of persuasion bearing on its legality and enforceability. A party challenging the judicial interposition of a prenuptial agreement, used to defeat a right of election, may demonstrate by a preponderance of the evidence that the premarital relationship between the contracting individuals manifested “probable” undue and unfair advantage
 
 (Matter of Gordon v Bialystoker Ctr. & Bikur Cholim,
 
 45 NY2d 692, 699-700). In these exceptional circumstances, the burden should fall on the proponent of the prenuptial agreement to show freedom from fraud, deception or undue influence.
 

 The reversal by the Appellate Division of the Surrogate’s Court’s decree reflects a misapprehension of governing law, in that the Appellate Division reached its conclusion without factoring or finding facts relevant to fixing the evidentiary burden for this kind of case. Thus, this Court should remit for plenary consideration of the particular legal issue, and all others explicitly bypassed but raised at the intermediate level of appellate review.
 

 Appellant Helen Greiff married Herman Greiff in 1988 when they were 65 and 77 years of age, respectively. They had entered into reciprocal prenuptial agreements in which each
 
 *344
 
 expressed the usual waiver of the statutory right of election as against the estate of the other. The husband died three months after the marriage, leaving a will that made no provision for his surviving spouse. The will left the entire estate to Mr. GreifFs children from a prior marriage. When Mrs. Greiff filed a petition seeking a statutory elective share of the estate, Mr. GreifFs children countered with the two.prenuptial agreements which they claimed precluded Mrs. Greiff from exercising a right of election against her husband’s estate (see, EPTL 5-1.1 M).
 

 A trial was held in Surrogate’s Court, Kings County, on the issue of the validity and enforceability of the prenuptial agreements. The Surrogate explicitly found that the husband “was in a position of great influence and advantage” in his relationship with his wife-to-be, and that he was able to subordinate her interests, to her prejudice and detriment. The court further determined that the husband “exercised bad faith, unfair and inequitable dealings, undue influence and overreaching when he induced the petitioner to sign the proffered antenuptial agreements,” particularly noting that the husband “selected and paid for” the wife’s attorney. Predicated on this proof, the credibility of witnesses and the inferences it drew from all the evidence, Surrogate’s Court invalidated the prenuptial agreements and granted a statutory elective share of decedent’s estate to the surviving spouse.
 

 The Appellate Division reversed, on the law, simply declaring that Mrs. Greiff had failed to establish that her execution of the. prenuptial agreements was procured through her thenfiancé’s fraud or overreaching. This Court granted the widow leave to appeal. We now reverse.
 

 A party seeking to vitiate a contract on the ground of fraud bears the burden of proving the impediment attributable to the proponent seeking enforcement
 
 (see, Matter of Gordon v Bialystoker Ctr. & Bikur Cholim,
 
 45 NY2d 692, 698,
 
 supra).
 
 This rubric also applies generally to controversies involving prenuptial agreements
 
 (see, Matter of Phillips,
 
 293 NY 483, 488).. Indeed, as an incentive toward the strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements, including prenuptial agreements
 
 (see, Matter of Davis,
 
 20 NY2d 70, 74;
 
 Matter of Phillips, supra,
 
 at 491; EPTL 5-1.1, formerly Decedent Estate Law § 18), this Court has eschewed subjecting proponents of these agreements to special evidentiary or freighted burdens (see,
 
 Matter of Sunshine,
 
 40 NY2d 875, 876).
 

 
 *345
 
 Importantly, however, neither
 
 Sunshine
 
 in 1976
 
 (supra)
 
 nor
 
 Phillips
 
 in 1944
 
 (supra)
 
 entirely insulates prenuptial agreements from typical contract avoidances. That proposition includes the kind of counterpoint advanced by the surviving spouse in this case to offset her stepchildren’s use of the prenuptial agreements against her claim for her statutory elective share
 
 (see, Matter of Davis, supra,
 
 at 76; Rhodes [editor], New York Actions and Remedies, Family Law, Wills and Trusts, Marriage and Dissolution, § 2.10; 3 Lindey, Separation Agreements and Antenuptial Contracts §§ 90.03, 90.06).
 

 This Court has held, in analogous contractual contexts, that where parties to an agreement find or place themselves in a relationship of trust and confidence at the time of execution, a special burden may be shifted to the party in whom the trust is reposed (or to the proponent of the party’s interest, as in this case) to disprove fraud or overreaching
 
 (see, e.g., Matter of Gordon v Bialystoker Ctr. & Bikur Cholim, supra,
 
 at 698-699;
 
 Christian v Christian,
 
 42 NY2d 63, 72;
 
 Sharp v Kosmalski,
 
 40 NY2d 119, 121-122;
 
 see also,
 
 I Farnsworth, Contracts § 4.11, at 452 [2d ed]).
 

 As an illustration, in
 
 Gordon (supra),
 
 the administrator of the decedent’s estate challenged the transfer of funds by the decedent, one month before her death, to the nursing home in which she was a patient. The Court restated its applied guidance, as part of the invalidation of the transfer, as follows:
 

 ‘Whenever * * * the relations between the contracting parties appear to be of such a character as to render it certain that * * * either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from an overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable,
 
 * * * it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well
 
 understood”
 
 (Gordon v Bialystoker Ctr. & Bikur Cholim,
 
 at 698-699 [emphasis added], quoting
 
 Cowee v Cornell,
 
 75 NY 91, 99-100).
 

 This enduring, nuanced balance of fair assessment can be applicable in the context of prenuptial agreements
 
 (see, Matter of Sunshine, supra,
 
 at 876;
 
 Matter of Davis, supra,
 
 at 76;
 
 Matter
 
 
 *346
 

 of Phillips, supra,
 
 at 491;
 
 Graham v Graham,
 
 143 NY 573, 579-580). We emphasize, however, that the burden shift is neither presumptively applicable nor precluded. We eschew absolutist rubrics that might ill serve the interests of fair conflict resolution as between proponents or opponents of these kinds of ordinarily useful agreements.
 

 This Court’s role here is to clarify, harmonize and find a happy medium of views reflected in the cases. For example,
 
 Graham
 
 has been read as holding that prenuptial agreements were presumptively fraudulent due to the nature of the relationship between prospective spouses.
 
 Phillips,
 
 on the other hand, has been urged to suggest that prenuptial agreements may never be subject to burden-shifting regardless of the relationship of the parties at the time of execution and the evidence of their respective conduct.
 

 Graham
 
 was decided in 1894 and indicated that prospective spouses stand in a relationship of confidence which necessarily casts doubt on or requires strict scrutiny concerning the validity of an antenuptial agreement. Its outdated premise, however, was that the man “naturally” had disproportionate influence over the woman he was to marry
 
 (Graham v Graham, supra,
 
 at 580;
 
 see,
 
 3 Lindey, Separation Agreements and Ante-nuptial Contracts § 90.03).
 

 A century later society and law reflect a more progressive view and they now reject the inherent inequality assumption as between men and women, in favor of a fairer, realistic appreciation of cultural and economic realities
 
 (see, e.g.,
 
 Domestic Relations Law § 236 [B];
 
 O’Brien v O’Brien,
 
 66 NY2d 576). Indeed, the law starts marital partners off on an equal plane. Thus, whichever spouse contests a prenuptial agreement bears the burden to establish a fact-based, particularized inequality before a proponent of a prenuptial agreement suffers the shift in burden to disprove fraud or overreaching. This rule is less rigid than
 
 Graham’s
 
 presumptive equation.
 

 Phillips
 
 tugs in the opposite direction from
 
 Graham.
 
 On close and careful analysis, however,
 
 Phillips
 
 does not upset the balanced set of operating principles we pull together by today’s decision. While holding that antenuptial agreements are not enveloped by a presumption of fraud, the Court in
 
 Phillips
 
 indicated that some extra leverage could arise from the “circumstances in which the agreement was proposed”
 
 (Matter of Phillips, supra,
 
 at 491). This language does not turn its back entirely on
 
 Graham.
 
 Rather, it is generous enough to encom
 
 *347
 
 pass the unique character of the inchoate bond between prospective spouses — a relationship by its nature permeated with trust, confidence, honesty and reliance. It allows further for a reasonable expectation that these relationships are almost universally beyond the pale of ordinary commercial transactions. Yet, the dispositive tests of legitimacy and enforceability of their prenuptial agreements need not pivot on the legalism or concept of presumptiveness. Instead, a particularized and exceptional scrutiny obtains.
 

 The Appellate Division’s approach here did not allow for the calibration and application of these legal principles. Therefore, this Court is satisfied that the most prudent course for the fair resolution of this case is a remittal of the case to that court for its determination. A specific frame of reference for that court should be whether, based on all of the relevant evidence and standards, the nature of the relationship between the couple at the time they executed their prenuptial agreements rose to the level to shift the burden to the proponents of the agreements to prove freedom from fraud, deception or undue influence. Additionally, since the Appellate Division expressly declined to reach other issues raised by the parties in that court, it will now have that opportunity. We note finally that this Court’s reversal and remittal reflect and imply no view of or preference concerning the ultimate factual evaluation and fair resolution by the Appellate Division within its plenary intermediate appellate court powers.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs to all parties appearing and filing separate briefs payable out of the estate, and the matter should be remitted to that court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Smith, Levine, Cipakick and Wesley concur.
 

 Order reversed, etc.