The parties were married on December 16, 1995. In March 1996, the parties entered into a postnuptial agreement. The agreement provided that the jointly owned marital residence, which had been purchased for approximately $3.1 million after the parties were married, and which was subsequently renovated *696 at a cost of between $3 million and $5 million, was the defendant’s separate property.
The agreement further provided that if the parties divorced, the plaintiff, who had not been employed other than as a homemaker since October 1995, would waive her interest in any business in which the defendant had an interest, including any appreciation in the value of such interests accruing during the marriage. At the time the agreement was entered into, the defendant valued his interests in these business entities at over $10 million. The plaintiff also waived any and all rights she had to the defendant’s estate, including her right to an elective share. At the time the agreement was entered into, the defendant valued his net worth at more than $22 million.
Finally, the agreement provided that if the parties divorced, the plaintiff would waive any right to maintenance except as provided in schedule “C” of the agreement, which indicated that the plaintiff could receive maintenance in the sum of between $24,000 and $36,000 per year, for varying lengths of time, depending on the duration of the marriage. The defendant’s obligation to pay the limited maintenance enumerated in the agreement was contingent upon his receipt of certain visitation with any children that the parties might have, and upon certain residency requirements imposed upon the plaintiff.
In 2008, the plaintiff commenced this action, inter alia, for a divorce on the ground of constructive abandonment. In his answer, the defendant, among other things, sought enforcement of the postnuptial agreement. The defendant subsequently moved for a protective order in response to the plaintiff’s discovery demands, and the plaintiff cross-moved to set aside the postnuptial agreement.
A hearing was held at which both parties testified. The plaintiff testified that the defendant had presented the postnuptial agreement to her for signature days after her 42nd birthday, and shortly after she had suffered a miscarriage. She testified that the defendant had “bullied” her into signing the agreement by threatening that they would not have any children and that the marriage would be over if she did not consent to the postnuptial agreement. The plaintiff testified that she and the defendant had agreed to have children prior to the marriage, and that their agreement to have children had been an important factor in her decision to marry him. She signed the agreement within days of receiving it and, although she reviewed some portions of it, she did not understand its terms and did not consult an attorney. The plaintiff also adduced evidence demonstrating that the statement of the defendant’s net *697 worth contained in the agreement was inaccurate at the time it was made in that it was undervalued by at least $11 million.
When the defendant testified, he denied any knowledge of the plaintiffs miscarriage and stated that he had wanted the post-nuptial agreement in order to protect his son from a prior marriage. The defendant testified that the parties had discussed the issue of entering into a postnuptial agreement prior to the marriage and that they had negotiated the postnuptial agreement over the course of many weeks. The defendant testified that his attorney had drafted the agreement and that he believed that the plaintiff had consulted with her own attorney, although she had not disclosed her attorney’s name to him. The defendant explained that the marital residence had been purchased in both parties’ names because the plaintiff said she wanted to have her name on it “for perception purposes, for other people,” but that she had been willing to sign the agreement converting it into the defendant’s separate property shortly after its purchase.
In a decision made after the hearing, the Supreme Court expressed doubts as to the defendant’s veracity and credited the plaintiffs testimony over conflicting portions of the defendant’s testimony. The court found that the plaintiff had not been represented by counsel and had been precluded from effectively-analyzing the financial impact of the postnuptial agreement due to the inaccuracies contained in the financial disclosures that had been incorporated into the agreement. The court determined that the terms of the agreement were “wholly unfair” and, after examining the totality of the circumstances, concluded that it was unenforceable. In a subsequent order, made upon the decision, the court granted the plaintiffs cross motion to set aside the postnuptial agreement.
In general, a postnuptial agreement “which is regular on its face will be recognized and enforced by the courts in much the same manner as an ordinary contract” (Levine v Levine, 56 NY2d 42, 47 [1982]; see Rauso v Rauso, 73 AD3d 888, 889 [2010]; Cioffi-Petrakis v Petrakis, 72 AD3d 868, 869 [2010]; Whitmore v Whitmore, 8 AD3d 371, 372 [2004]). However, “[agreements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost of good faith” (Christian v Christian, 42 NY2d 63, 72 [1977]; see Matter of Greiff, 92 NY2d 341, 345 [1998]; O'Malley v O'Malley, 41 AD3d 449, 451 [2007]; Manes v Manes, 277 AD2d 359, 361 [2000]). Accordingly, “courts have thrown their cloak of protection” over postnuptial agreements, “and made it their business, when confronted, to see to it that they are arrived at *698 fairly and equitably, in a manner so as to be free from the taint of fraud and duress, and to set aside or refuse to enforce those born of and subsisting in inequity” (Christian v Christian, 42 NY2d at 72; see Infante v Infante, 76 AD3d 1048, 1049 [2010]).
Because of the fiduciary relationship between spouses, post-nuptial agreements “are closely scrutinized by the courts, and such agreements are more readily set aside in equity under circumstances that would be insufficient to nullify an ordinary contract” (Levine v Levine, 56 NY2d at 47; see Kabir v Kabir, 85 AD3d 1127, 1127 [2011]; Manes v Manes, 277 AD2d at 361; Cardinal v Cardinal, 275 AD2d 756, 757 [2000]). “To warrant equity’s intervention, no actual fraud need be shown, for relief will be granted if the [agreement] is manifestly unfair to a spouse because of the other’s overreaching” (Christian v Christian, 42 NY2d at 72-73; see Infante v Infante, 76 AD3d at 1049; OMalley v OMalley, 41 AD3d at 451; Frank v Frank, 260 AD2d 344, 345 [1999]; see also Levine v Levine, 56 NY2d at 47).
In determining whether a postnuptial agreement is invalid, “courts may look at the terms of the agreement to see if there is an inference, or even a negative inference, of overreaching in its execution” (Christian v Christian, 42 NY2d at 73; see Terio v Terio, 150 AD2d 675, 675-676 [1989]; Stern v Stern, 63 AD2d 700, 700-701 [1978]). A spouse seeking to set aside a postnuptial agreement initially “bears the burden to establish a fact-based, particularized inequality” (Matter of Greiff, 92 NY2d at 346; see Matter of Barabash, 84 AD3d 1363, 1364 [2011]; D’Elia v D’Elia, 14 AD3d 477, 478-479 [2005]; accord Brennan-Duffy v Duffy, 22 AD3d 699, 700 [2005]; Chambers v McIntyre, 5 AD3d 344, 345 [2004]). Where this initial burden is satisfied, a proponent of a postnuptial agreement “suffers the shift in burden to disprove fraud or overreaching” (Matter of Greiff, 92 NY2d at 346; see Matter of Barabash, 84 AD3d at 1364; D’Elia v D’Elia, 14 AD3d at 478-479).
Here, the plaintiff demonstrated that the terms of the post-nuptial agreement were manifestly unfair given the nature and magnitude of the rights she waived, particularly the relinquishment of her property rights in the marital residence and her waiver of all of her inheritance rights, in light of the vast disparity in the parties’ net worth and earnings (see Manes v Manes, 277 AD2d at 361; Frank v Frank, 260 AD2d at 345; Terio v Terio, 150 AD2d at 675-676; Stern v Stern, 63 AD2d at 700-701; see also O’Malley v O’Malley, 41 AD3d at 451; Pisano v Pisano, 71 AD2d 670, 670 [1979]; cf. Levine v Levine, 56 NY2d at 47). Furthermore, inasmuch as the terms of the agreement were manifestly unfair to the plaintiff and were unfair when the *699 agreement was executed, they give rise to an inference of overreaching (see Christian v Christian, 42 NY2d at 73; Terio v Terio, 150 AD2d at 675-676; Stern v Stern, 63 AD2d at 700-701). This inference of overreaching is bolstered by the evidence submitted by the plaintiff, including her testimony, regarding the circumstances which led her to give her assent to the post-nuptial agreement (see Kabir v Kabir, 85 AD3d at 1127; Cardinal v Cardinal, 275 AD2d at 757; Terio v Terio, 150 AD2d at 675-676). The defendant’s testimony which tended to show that he did not engage in overreaching raised an issue of credibility, and we decline to disturb the Supreme Court’s determination with respect thereto (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492 [1983]; Reid v Reid, 57 AD3d 960 [2008]).
The defendant’s remaining contentions are without merit.
Accordingly, the Supreme Court properly granted the plaintiffs cross motion to set aside the parties’ postnuptial agreement. Eng, P.J., Florio, Sgroi and Miller, JJ., concur.